[S. F. No. 14575. In Bank.—October 27, 1933.]

GEORGIA BOCK et al., Respondents, v. HAMILTON SQUARE BAPTIST CHURCH (a Corporation), Appellant.

Robert B. Gaylord and Gaylord & Lovell for Appellant.

Raymond D. Williamson for Respondents.

PRESTON, J.—After consideration of this cause, we hereby adopt as our opinion herein, the following opinion prepared by Mr. Justice Spence, Acting P. J., for the honorable District Court of Appeal, First Appellate District, Division Two:

"Upon a trial by the court sitting without a jury plaintiffs recovered judgment in the sum of $11,000 as damages resulting from personal injuries sustained by plaintiff Georgia Bock. From this judgment defendant appeals.

"The plaintiffs were husband and wife. The defendant corporation was the owner of a three-story apartment house located on the southeast corner of Post and Steiner streets in San Francisco. Plaintiffs rented from the defendant through Mrs. Hungate, defendant's manager, the rear apartment on the second floor. This apartment could be entered through the main hallways from the front entrance of the building on Post street or by means of a stairway in the rear of the building. Said rear stairway was not leased to any tenant but was retained by defendant for the common use of the tenants in the three rear apartments. The record on appeal does not contain a detailed description of said stairway and the photographs which were introduced in evidence are not before us. It appears, however, that there was a railing at the sides of the steps and also at the sides of a platform which was located about opposite the rear door of plaintiffs' apartment. This railing was about $3\frac{1}{2}$ feet high and consisted of perpendicular boards surmounted by a grooved railing, the top of the boards fitting into the groove in the railing.

"When plaintiffs rented the apartment there were clothes lines paralleling the railing on three sides of the platform. These lines were about a foot and one-half or two feet above the railings and were attached to the posts at the corners of the platform. They were old and dirty and the plaintiff L. A. Bock replaced them. These clothes lines were actually used by both plaintiffs and Mrs. Hungate, the defendant's manager, who resided in the rear apartment on the first floor, but it does not appear that other tenants made use of them.

There was also located on this platform a garbage can furnished by the owner.

"The accident happened on June 24, 1928. The plaintiff Georgia Bock went out onto the rear stairway from plaintiffs' apartment, went up a few steps to the platform and was in the act of hanging a tea towel on one of the clothes lines when she fell approximately 18 feet to the ground below. There was no other witness to the accident and the injured woman could not tell what had happened from the time she was hanging out the towel until the time she regained consciousness. Her husband was attracted by the loud crash and found his wife unconscious on the ground. He also found there the garbage can and its contents, together with portions of the boards and railing. The railings and boards were introduced as exhibits in the trial court. Plaintiffs state that these exhibits establish the fact that due to decay and corrosion the boards and nails were in an unsafe condition. Defendant replies that the portion of the transcript relating to the introduction of the exhibits does not so state. These exhibits are not before us but we do not believe that defendant seriously questions the unsafe condition which existed. It appears that long before the accident, Mrs. Hungate, defendant's manager, knew that certain portions of the stairway were in bad condition, as the carpenter who had been engaged to do some repairing thereon had told her that 'the whole back stairway should be reconditioned because it was in poor condition'.

"On this appeal numerous authorities are cited but few of which are at all analogous in their facts. ■ The general rule applicable in cases like the present one is that 'where a portion of the premises is reserved by the landlord for use in common by himself and tenants, or by different tenants, a duty is imposed upon him to use ordinary care to keep those particular portions of the premises in a safe condition; and if he is negligent in this regard, and a personal injury results to a tenant by reason thereof, he is liable therefor . . . '. (*Hassell* v. *Denning,* 84 Cal. App. 479, 482 [258 Pac. 426, 427]. See, also, *Spore* v. *Washington,* 96 Cal. App. 345 [274 Pac. 407].) ■ Appellant does not apparently question this general rule but argues that the situation here is similar to the one presented in *Walsh* v. *Frey,* 116 App. Div. 527 [101 N. Y. Supp. 774], and falls within the excep-

tions to the general rule discussed in *De Motte* v. *Arkell*, 77 Cal. App. 610 [247 Pac. 254], at pages 623 to 625. As stated in the last-mentioned opinion, at page 623, the authorities referred to are 'cases having to do with the misuse of platforms and guardrails in cases where the landlord actually retains control'. We cannot say that there was any *misuse* of the platform or guardrail in the present case and we believe that the trial court was justified in impliedly finding that the stairway and platform was reserved by appellant for the common use of the tenants not only as a means of ingress and egress, but also as a means of drying linen on the clothes lines surrounding the platform. While it may be true as contended by appellant that there were clothes lines in the basement for the common use of the tenants, it is likewise true that there were clothes lines on said platform apparently for such common use when respondents rented their apartment. We are, therefore, of the opinion that the facts in the present case bring it within the general rule above stated rather than the exceptions relied upon by appellant; and as appellant's manager had actual notice of the defective condition of the entire stairway and as nothing was done to remedy the condition, there was ample evidence to sustain the finding of negligence.

 ''Appellant further contends that 'the burden is upon plaintiffs to establish defendant's negligence as the proximate cause of the accident; the plaintiffs have failed to establish the cause of the accident'. Under this heading appellant discusses the doctrine of *res ipsa loquitur* and claims that it was not applicable. Respondents do not discuss this doctrine and we know of no reason for their doing so as we do not believe they were compelled to rely upon it in support of the findings and judgment. Appellant's contention embraces the further claim that even assuming negligence on the part of appellant, respondents failed to establish that such negligence was the proximate cause of the injury. It must be conceded that the precise cause was not established by direct evidence, but in our opinion there was sufficient evidence from which it might be inferred that the negligence of appellant was the proximate cause. From the evidence before the court it could be properly inferred that the injured woman leaned against the defective railing while in the act of hanging out the towel and that said railing gave way, thereby precipitating her to the ground below.

■ "Appellant further contends that even assuming that a defective railing caused the accident still respondents cannot recover. In this connection appellant argues that if the defects were patent, respondents are chargeable with contributory negligence; while, if the defects were latent, there is no proof of lack of care on the part of appellant. The trial court found generally against appellant's claim of contributory negligence and further found that the defective condition of the railing was not known to or apparent to the injured woman and was 'entirely concealed from her view'. We believe these findings as well as the findings relating to negligence on the part of appellant are sustained by the evidence.

■ "The next contention is that appellant was entitled to a segregation of general damage as between the two respondents. Appellant requested such segregation before the findings were filed, but the trial court made its findings covering the general damage found to have been sustained by both respondents collectively. In support of its contention appellant cites *Bloomberg* v. *Laventhal,* 179 Cal. 616 [178 Pac. 496], *Murphy* v. *Stelling,* 8 Cal. App. 702 [97 Pac. 672], and *Phelps* v. *Arnold,* 112 Cal. App. 518 [297 Pac. 31], but a reading of these cases shows that none is in point. Appellant then states that there are two reasons why such segregation should have been made in the present case. The first reason advanced is that if respondent Georgia Bock should die pending this appeal her right of action would abate. This alleged reason is based upon an erroneous conception of the law. (*Fowden* v. *Pacific Coast Steamship Co.,* 149 Cal. 151 [86 Pac. 178]; *Blackwell* v. *American Film Co.,* 48 Cal. App. 681 [192 Pac. 189]; 1 Cal. Jur. 76.) The second reason advanced is that by failure to separately fix the amount of damage suffered by the husband and wife respectively, it is impossible to determine the propriety of the award so far as it concerns either. In our opinion appellant is not entitled as a matter of right to such segregation and may not complain if the amount awarded to cover the general damage sustained by both respondents finds support in the evidence.

■ "It is finally urged by appellant that the damages awarded were excessive. We find no merit in this contention. The special damages found by the court amounted to

$869.40, leaving a balance of $10,130.60 as general damages. Briefly stated, the evidence shows that at the time of the accident respondent Georgia Bock was an active woman, 41 years of age and in good health; that she sustained serious injuries in her fall, including a concussion of the brain followed by a state of disorientation which may be permanent; fracture of the left foot, including the second and third metatarsal bones; a broken nose, multiple contusions and abrasions of the body and limbs; lacerations of the face and hands, together with internal injuries and a severe shock to her nervous system; that she was in bed for five or six months following the accident; that at the time of the trial, which was approximately two years after the accident, she still had swelling, discoloration and cyanosis of both legs being marked on the left leg and was still using a cane; and that she was still unable to perform her household duties or engage in other activities in the way she had prior to the accident. On the trial the condition of the injured woman's left leg was exhibited to the court. Considering all of the evidence covering the nature of the injuries, the long confinement, the pain and suffering and the probable permanency of the effects of said injuries, we cannot say that the amount awarded to cover the general damages to both respondents was excessive.''

The judgment is affirmed.

Langdon, J., Seawell, J., Waste, C. J., and Thompson, J., concurred.