[Civ. No. 13464.   Second Dist., Div. One.   May 26, 1942.]

A. E. TURNER et al., Respondents, v. HYMAN LISCHNER
et al., Appellants.

Derthick, Cusack & Ganahl and August Weymann for Appellants.

Henry S. Cohen and Bernard B. Cohen for Respondents.

WHITE, J.—Plaintiffs brought this action against defendants to recover damages for injuries suffered by plaintiff Amy Pearl Turner when a wooden railing on an upper porch of the premises owned by defendants and occupied in part by plaintiffs gave way and collapsed, thereby causing Mrs. Turner to fall to the ground a distance of approximately fourteen feet. The complaint alleges and it is undenied in the answer that the accident in question occurred on the 5th day of February, 1940. The case was tried with a jury, and at the conclusion of plaintiff's case motions for nonsuit were made on behalf of each defendant and denied. At the conclusion of the trial motions for a directed verdict in favor of the defendants were made, and likewise denied. The jury returned a verdict in favor of the plaintiffs and assessed damages against the defendants in the sum of $850. From the judgment entered upon such verdict defendants prosecute

this appeal. The record is brought into this court upon a bill of exceptions.

We are unable to give an epitome of the evidence in its entirety for the reason that the bill of exceptions before us bears in part the following certificate of the trial court:

". . . and the same is therefore allowed, settled and certified by me that the testimony contained therein is a summary of all the testimony in the record bearing on the knowledge of the defendants as to any defect in the porch rail as described in the complaint, and on that point alone."

Notwithstanding the several claims urged by appellants as grounds for a reversal of the judgment, we are restricted to a consideration only of the claim that the evidence is insufficient as a matter of law to show that appellants had knowledge of the defective condition of the porch railing in question. This for the reason that it is the settled rule that when a bill of exceptions has been duly certified and engrossed, the reviewing court will not give consideration to matters outside the record and will not review any question of fact presented in the briefs of counsel, unless such factual matters may be quoted from the transcript on appeal. (*Shively* v. *Kochman,* 20 Cal. App. (2d) 688, 691 [68 P. (2d) 255]; *Steele* v. *International Air Race Assoc.,* 47 Cal. App. (2d) 61 [117 P. (2d) 407]; *Daly* v. *Otis,* 92 Cal. App. 242, 243 [267 Pac. 921].) In the light of the record before us, we must assume that the porch railing was defective and that such defective condition was the sole proximate cause of the accident which resulted in the injuries sustained by plaintiff Mrs. Turner.

Confining ourselves to the sole question presented by the record, viz., whether appellants had knowledge of such defective condition of the railing in question, we find in the transcript testimony that in March, 1938, defendant Dr. Lischner employed a carpenter to put the premises in condition for leasing; that he was the only workman on the premises to his knowledge. Another witness testified that in February and March, 1938, he lived in a room from which, on March 12, he looked out of a window across a yard toward the porch described in the pleadings herein, about thirty feet away, and saw a man carrying lumber and making repairs; that he saw this man nail a board, approximately one by six inches, across the top of the railing; that at that time he saw the defendant Dr. Lischner on the premises, and that the doctor had his

sign on the building at the same time. While it is true that the carpenter aforesaid by his testimony denied nailing the one-by-six on top of the railing, his testimony served only to create a conflict with the inferences logically deducible from the testimony of the previous witness who testified that he saw the one-by-six nailed on the railing. Another witness testified that she was present on or about March 3, 1938, when defendant Dr. Lischner was informed that the building and porches were in bad shape and was asked to make some repairs, to which he replied that he would not spend any more money on the building; that he had spent all he was going to spend. This witness was present on another occasion shortly after May 3, 1938, when Dr. Lischner was again informed that the premises were in bad shape and that the building and porches required repair, to which the named defendant again replied that he would not spend any more money on the place. This same witness, who testified that she was engaged in the real estate business in February and March, 1938, and was familiar with the condition of the premises involved in this case as of that time, identified certain photographs as being fair representations of the condition of the rear end of the building and the stairs during the months of February and March, 1938. Another witness testified directly that she was the woman mentioned by the preceding witness who had informed defendant Dr. Lischner of the allegedly bad condition of the building and porches and had requested him to make some repairs. She also testified that on the two occasions in question when she talked with said defendant, the latter informed her of his unwillingness to spend any more money in repairing the premises.

The defendant Dr. Lischner testified that he had no knowledge of any latent or other defect in the porch rail; that prior to leasing the premises in March, 1938, he employed a carpenter to put the premises in condition; he denied that he had his office or office sign on the premises in March of 1938. The carpenter heretofore mentioned further testified that he examined the rear stairs and porch of the building in question and that they "appeared in safe and sound condition"; that he did not nail the board on the top of the railing. Another witness, testifying for the defendants, stated that from October, 1937, to March, 1938, he lived on the premises; that he used the rear porch frequently to hang out wash; that the

porch and railing appeared to be in good condition. Similar testimony was given by another tenant.

It is conceded by all parties to the instant litigation, and the exhibit introduced into evidence and now before us confirms the concession, that the defect in question was a latent one at the time of the accident. ██ Where, as in the case at bar, a portion of the premises, that is, the porch and clothesline, as indicated by the testimony, are reserved by the landlord for use in common by the different tenants, there is imposed upon the former a duty to use ordinary care to keep those particular portions of the premises in a safe condition. If a personal injury results to a tenant from the landlord's negligence in this regard, the latter is liable therefor. (*Bock* v. *Hamilton Square Baptist Church,* 219 Cal. 284, 287 [26 P. (2d) 7].) ██ If this case presented the familiar legal question as to the liability of the landlord for injury to a tenant to a defect unknown to either, our task would be a simple one, for it is uniformly held that in cases involving injury to a tenant when a portion of a guard railing collapses where there is no evidence to charge the owner with notice any more than there is to charge the tenant with like notice, recovery cannot be had (*Ayres* v. *Wright,* 103 Cal. App. 610 [284 Pac. 1077] ; *De Motte* v. *Arkell,* 77 Cal. App. 610 [247 Pac. 254]), for the reason that liability for personal injuries to a tenant attaches to a landlord because he knew, not because he ought to have known, of the defective condition of the premises. But the law is equally well settled that where there are conditions which may tend to create a nuisance, accompanied by surrounding circumstances such as would reasonably and justly put an owner on inquiry, and where a landlord is acquainted with specific facts which tend to subject occupants of the property to dangers, actual knowledge on his part of such facts may warrant the conclusion, based on common experience, that there was present notice of defects that was the equivalent of knowledge thereof. Under the existence of such circumstances liability attaches to the landlord because the law assumes, under such conditions, not only that he ought to have known but that he did know.

██ Having in mind the ever-present duty resting upon a landlord not to expose his tenants to risks of which he has knowledge, we are confronted with the question whether the evidence in the case at bar provides proof of knowledge or its equivalent upon his part. We are persuaded that the evidence

in this case, together with the reasonable inferences and deductions to be drawn therefrom, authorized the jury to conclude that the appellant owner was possessed of knowledge or the equivalent of knowledge of the defective condition of the porch railing. It is unnecessary to here reiterate the evidence hereinbefore narrated. Suffice it to say that such evidence supplies proof of the fact that complaint was made to appellant Dr. Lischner of the defective condition existing in the porch construction; that his reply to such complaints consisted of an expression of his refusal to spend further sums of money upon the premises; that an employee of appellant nailed a board across the top of the railing. In this connection it should be noted that the porch railing which collapsed, with the board nailed thereon, was exhibited to the jury and is now before us. This exhibit not only discloses the defective condition of the railing, but warrants the inference that appellant's employee carelessly nailed the one-by-six on top of the two-by-four, thereby not only concealing an existing defect but creating a dangerous hazard not thereafter observable or noticeable by respondents.

True, some of the evidence upon which the foregoing inferences might be predicated was contradicted by witnesses for the defendants, but such contradictions only presented to the jury the duty of formulating a verdict based on conflicting testimony. Even though we concede that there were present in the case direct testimony and evidence of circumstances that, had the verdict been in favor of defendants, such verdict would have been supported by ample proof, nevertheless this court is not empowered to review questions of fact where there is in the record substantial evidence and inferences deducible therefrom, although contradicted, which if believed by the jury will support their verdict. In such a situation, the jury's verdict as to such matters is final and conclusive. The alleged weakness and lack of convincing force of the evidence for a party to the litigation is a matter primarily for consideration by the trial court or jury.

■ Appellants' final contention, that the trial court erred in denying their motions for a nonsuit, directed verdict and judgment notwithstanding the verdict, cannot be sustained, under the general and uniformly recognized rule that such motions must be denied when there is any evidence to sustain the plaintiff's case. In passing upon such motions, the power of the court is strictly limited. It has no authority to weigh the evidence, but must view it in the light most favorable

to plaintiff. In other words, the court must give to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference that may be drawn from such evidence.

For the foregoing reasons, the judgment is affirmed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied June 22, 1942.