[L. A. No. 19554. In Bank. June 25, 1946.]

SOPHYE HARRIS, Respondent, v. ROSAMOND JOFFE, Appellant.

C. A. Pinkham for Appellant.

Samuel De Groot for Respondent.

EDMONDS, J.—Sophye Harris slipped and fell while walking through the entrance way to the apartment house in which she was a tenant. The appeal from the judgment in her favor presents for decision questions concerning the respective duties of the parties in connection with the maintenance and use of that part of the building.

The facts are undisputed. At the time of the accident, Mrs. Harris was leaving the building by means of the front entrance. A corridor, four or five feet wide, and finished with tile or composition material, extended from the door to the sidewalk, a distance of about 10 feet. Four feet from the door, there were two steps, each six inches in height, by which one descended to the sidewalk level. The corridor was under the care and control of Rosamond Joffe, the owner of the property. It is described in the record as the "vestibule," the "lobby" and the "entrance."

Mrs. Harris testified that either during rain or when the lawn was sprinkled, water tracked into the corridor made the floor very slippery. Also, she said, the electric light was "on and off most of the time." Because of these conditions, she considered that the corridor was dangerous.

Upon several occasions, prior to the night of the accident, Mrs. Harris and another tenant had notified Mrs. Joffe that the light in the vestibule was not burning. Complaint was also made that the floor was dangerous because of the lack of a covering.

These conversations extended over a period of several months. The last time Mrs. Harris brought the matter to the attention of the owner was about a week prior to the date of the accident. Her daughter slipped while walking through the vestibule and almost fell down. Mrs. Harris remarked to the owner about this incident and was assured that the condition would be corrected. "There was a light put in," said

Mrs. Harris, "but it wasn't in very long." It was "on and off continuously, mostly off," she said, and no floor covering was provided.

Another tenant testified that she also complained to the owner about the condition of the vestibule. This was less than a month before the accident to Mrs. Harris, "sometime in November." This tenant told the owner that her husband almost "fell down on account of not having a light and a mat." And although Mrs. Joffe said she would "take care of it," nothing was done. This tenant testified further that "the lights are on and off," and when it rained, or when the gardener used water, the vestibule was slippery. She said that other tenants with whom she talked were also aware of the condition.

About 8 o'clock in the evening, Mrs. Harris, accompanied by her husband and nephew, was leaving the building. She was not in a hurry and was walking in the ordinary manner. Upon opening the door leading into the vestibule, she noticed that the light was out and that "it was drizzling a little, it was wet." She testified that she didn't know how long it had been raining because she had been in her apartment "from early in the evening." In describing the condition of the vestibule at that time she said: "There wasn't any lighting at all; . . . it was too dark to see anything." In response to the question: "Did you go back to Mrs. Joffe's apartment and tell her about it then?" Mrs. Harris replied: "She wasn't home." No one else was in charge of the apartments, nor did she know how the light was operated.

Concerning the happening of the accident, Mrs. Harris stated that "the corridor as we stepped out was rather slick" from being wet "and I slipped and fell clear down the steps." There was no covering on the floor. But in answer to the question as to whether anything except the slippery condition caused her to fall, she replied: "No, it happened so fast." Mrs. Harris landed with her right foot curled under her, sustaining a fractured bone in her right foot.

The testimony of Mrs. Joffe shows that in the middle of the vestibule there was a one bulb electric light fixture hanging from the ceiling. This light was controlled by an electric clock located in the basement. So far as she knew, the light was burning at the time Mrs. Harris was injured. She said that there was only one entrance in the front of the building and that it was used by all the tenants, unless "they are

coming from the garage." But the record includes no evidence concerning the condition of the other entrance.

Following the presentation of this evidence, the trial court ruled in favor of Mrs. Harris upon the issues of negligence, proximate cause, contributory negligence and unavoidable accident. The court found that the property owner "illegally and unlawfully maintained said vestibule, in that said vestibule was dark and unlighted and said floor of said vestibule was slippery and without any covering. That on said day at said hour and for sometime previous thereto, it was raining and that the floor of said vestibule was slippery on account of said rain." Upon the previous complaints of the tenants, said the court, Mrs. Joffe stated "that she would have the vestibule light turned on, but notwithstanding such statement she failed to do so."

As pleaded and found by the court, at the time the accident occurred, the municipal code of the city of Los Angeles provided: "Every person conducting or managing any . . . apartment house shall, from sunset to sunrise of each day, light every hallway, corridor and stairway thereof so as to enable all persons to readily find, distinguish and use such means and ways of exit therefrom." (§ 57.47.) Admittedly, Mrs. Joffe's building was an "apartment house" within the meaning of this code section.

The appellant contends that the evidence, taken as a whole, fails to show any negligence on her part proximately contributing to the injuries of Mrs. Harris. The entire record, she says, is utterly devoid of any evidence indicating, or from which it may be inferred, that if the conditions, as found by the court, in fact existed, she had any notice of them on the particular night in question, or that they had existed for such a length of time as to put her upon notice. For these reasons, it is said, the trial court erred in denying a judgment of nonsuit and refusing to grant a new trial.

The owner of an apartment house, the argument continues, is not compelled, at his peril, to maintain a constant watch to make certain that the lights are on at all times; the duty in this regard is to use ordinary care to see that the premises are in a reasonably safe condition. Also, the court may take judicial notice of the fact that electric lights and electrical devices are uncertain in operation.

And, contends appellant, conceding for the purpose of argument only that she was negligent, the evidence shows

that the accident to Mrs. Harris was the result of her own contributory negligence. With full knowledge of the conditions of which she complained, Mrs. Harris remained upon the premises and thus assumed the risks attendant thereon. The danger was an open and obvious one and was as well known to her as to the appellant; with such knowledge she failed to exercise ordinary care for her own safety and protection. Under the circumstances, Mrs. Harris should have used the rear exit. It is not the law of this state, the appellant concludes, that the violation of a statute or ordinance in and of itself permits recovery where contributory negligence on the part of the person claiming to have been injured caused the accident.

There was substantial evidence to support the conclusions of the trial court that the property owner was negligent and that such negligence was the proximate cause of injury, replies the tenant. And the landlord is liable for damages, not only because of the failure to maintain the light at the time of the accident, but by reason of her neglect to remedy the situation when it was called to her attention on many previous occasions.

Upon the issue of contributory negligence, although conceding the rule to be that her contributory negligence would bar a recovery notwithstanding negligence of the owner, the burden of proof as to that defense was upon the owner, says Mrs. Harris. The evidence in that regard presented a question for the trial court, and the finding in her favor is not without support in the record. Finally, Mrs. Harris asserts, knowledge of a dangerous condition and the continued use of premises notwithstanding such knowledge, does not always make one guilty of contributory negligence.

The general rule that a landlord is not liable to a tenant for injuries due to the defective condition or faulty construction of the demised premises in the absence of fraud, concealment or covenant, is subject to exception. When a portion of the premises is reserved by the landlord for use in common by himself and his tenants, or by different tenants, a duty is imposed upon the property owner to use ordinary care to keep that particular portion of the premises in a safe condition. (*Bock* v. *Hamilton Square Baptist Church,* 219 Cal. 284, 287 [26 P.2d 7] ; *Dorfer* v. *Delucchi,* 61 Cal.App.2d 63, 64 [141 P.2d 905] ; *Turner* v. *Lischner,* 52 Cal.App.2d 273, 277 [126 P.2d 156] ; *Reiman* v. *Moore,* 42 Cal.App.2d 130,

136 [108 P.2d 452]; *Kossine* v. *Styliano,* 40 Cal.App.2d 721, 723 [105 P.2d 952]; *Ellis* v. *McNeese,* 109 Cal.App. 667, 670 [293 P. 854].) ■ But a landlord may not be charged with responsibility for a defective condition unless he had actual knowledge of the condition, or it has existed for such a period of time as to justify the conclusion that, in the exercise of ordinary care, he should have known of its existence within such time as would have given him a reasonable opportunity to make repairs. (*Mondine* v. *Sarlin,* 11 Cal.2d 593, 597 [81 P.2d 903]; *McKellar* v. *Pendergast,* 68 Cal.App.2d 485, 491 [156 P.2d 950]; *Owen* v. *Beauchamp,* 66 Cal.App.2d 750, 752 [152 P.2d 756]; *Van Wye* v. *Robbins,* 48 Cal.App.2d 660, 662 [120 P.2d 507]; *Wills* v. *J. J. Newberry Co.,* 43 Cal.App.2d 595, 599 [111 P.2d 346]; *Kossine* v. *Styliano, supra,* p. 724.)

One test for determining the issue of negligence is whether a person of ordinary prudence should have foreseen or anticipated that someone might be injured by his action or non-action. (*Terrell* v. *Key System,* 69 Cal.App.2d 682, 686 [159 P.2d 704]; *Schwerin* v. *H. C. Capwell Co.,* 140 Cal.App 1, 2 [34 P.2d 1050]; *Sweatman* v. *Los Angeles Gas & Elec. Corp.,* 101 Cal.App. 318, 322 [281 P. 677]; see Rest., Torts, §§ 284, 289, 290, 291.) And, ordinarily, it is the function of the trial court to determine from the evidence whether a person has failed to use ordinary care. (*Reiman* v. *Moore, supra; Kossine* v. *Styliano, supra.*) ■ But the proper conduct of a reasonable person in a particular situation may be prescribed by statute or ordinance; conduct that falls below such standard, in the absence of excuse or justification, is negligence as a matter of law. (*Thomson* v. *Bayless,* 24 Cal.2d 543 [150 P.2d 413]; *Johnson* v. *Griffith,* 19 Cal.2d 176 [120 P.2d 6]; *Berkovitz* v. *American River Gravel Co.,* 191 Cal. 195 [215 P. 675]; *Roxas* v. *Gogna,* 41 Cal.App.2d 234 [106 P.2d 227]; see Rest., Torts, § 286.)

■ It was necessary for the tenants to use the vestibule since it was the only entrance from the front of the apartment house. It was at all times under the care and control of the owner. The vestibule became very slippery when wet. This condition, brought about either by the cleaning of the vestibule or by tenants tracking water into the hallway, extended from August to December and, combined with the lack of proper lighting, was considered by the tenants to be dangerous. Complaints to Mrs. Joffe were made during a period of several months. Moreover, she was told

of at least two instances of slipping. One attempt to rectify the lack of lighting is shown by the evidence, but the darkened condition continued most of the time and no mat was placed on the floor of the vestibule. Although there is no evidence that Mrs. Joffe had actual knowledge of the condition at the time of the injury, her constructive knowledge may be inferred from the prior complaints, and she had the affirmative duty of using ordinary care to keep the vestibule in a safe condition.

Under these circumstances, the determination of the trier of fact adverse to Mrs. Joffe is conclusive upon appeal, for there is in the record substantial evidence which, with inferences deducible therefrom, amply support the findings in favor of the plaintiff. (See *Dorfer* v. *Delucchi, supra; Kossine* v. *Styliano, supra.*) ▮ Furthermore, since violation of the ordinance was undisputed and no excuse or justification was shown, Mrs. Joffe was negligent as a matter of law in failing to light the hallway.

▮ In response to the question as to whether she knew of any cause for her fall, other than the condition of the floor, Mrs. Harris replied: "No, it happened so fast." Both Mrs. Harris and another tenant stated that the vestibule was dangerous because it was slippery and there was no light. This is, at least, sufficient evidence from which it may be inferred that the negligence of Mrs. Joffe in maintaining a slippery and unlighted corridor was the proximate cause of injury. (See *Bock* v. *Hamilton Square Baptist Church, supra,* p. 288) and it may not reasonably be said that the trial court's finding in this regard is without support in the record. (See *Burtt* v. *Bank of California Nat. Assn.,* 211 Cal. 548, 551 [296 P. 68].)

▮ Turning to the question of contributory negligence, the finding of the trial court on this issue is also fully justified by the evidence. Previous knowledge of the defective condition is not, of itself, conclusive evidence that a plaintiff failed to exercise due care (*Hughes* v. *Quackenbush,* 1 Cal. App.2d 349, 356 [37 P.2d 99]; *Finch* v. *Willmott,* 107 Cal.App. 662, 667 [290 P. 660]), nor would failure to use the rear exit necessarily preclude recovery. (*Lagomarsino* v. *Market Street Ry. Co.,* 69 Cal.App.2d 388, 392 [158 P.2d 982].) Moreover, no evidence was introduced showing the condition of the rear entrance at the time of the accident.

Mrs. Harris testified that she was not in any hurry when

leaving the building and was walking in the ordinary manner. Upon opening the door leading onto the vestibule she noticed that it was "drizzling" and that there "wasn't any lighting at all." She didn't go back because the owner was not at home and no one else was in charge. Furthermore, she did not know how the light was operated. "It was too dark to see anything," Mrs. Harris testified, and since she had notified Mrs. Joffe of the condition, she might reasonably have assumed that it had been partially corrected to the extent of a covering on the floor of the vestibule. Certainly it may not be said that a reasonable person could draw from this evidence only an inference pointing unerringly to the negligence of Mrs. Harris proximately contributing to her injury (see *Flores* v. *Fitzgerald,* 204 Cal.374, 376 [268 P. 369]), and a reviewing court is not authorized to substitute its deductions for those of the trial court.

The decisions particularly relied upon by the appellant are not contrary to this conclusion. *Vosburgh* v. *Meda,* 61 Cal. App.2d 396 [143 P.2d 41], is factually similar to the present case. There a tenant tripped and fell on the stairway in a rooming house, but it was held that the trial court's finding upon the issue of contributory negligence was substantially supported by evidence concerning "the manner in which she was descending."

The appeal in *Colburn* v. *Shuravlev,* 24 Cal.App.2d 298 [74 P.2d 1060], was from a judgment of nonsuit. Plaintiff had removed a rug from its usual place in the hall and placed it on the living room rug for the purpose of cleaning. In hurrying to the door she tripped over the rug. She had notified defendant's manager of the defect in the rug and each time had received the promise that it would be repaired. But this case is distinguishable from the present one; the accident did not happen in the hallway under the care and control of the landlord, no evidence was introduced showing that the plaintiff was walking in an ordinary manner, and because she had evidently inspected the rug just prior to the accident, she could not reasonably assume that it had been repaired.

The evidence in *Matherne* v. *Los Feliz Theatre,* 53 Cal. App.2d 660 [128 P.2d 59], included no testimony that the owner knew of the slippery condition of the lobby where plaintiff slipped, or that the water had dripped for such a length of time that in the exercise of ordinary care, he should have known of the dangerous condition. Under such circumstances, there was no basis for a recovery by the plaintiff.

The appellant quotes from *Stricklin* v. *Rosemeyer*, 61 Cal. App.2d 359, 362 [142 P.2d 953], as follows: "One having a choice between methods of doing an act which are equally available, who chooses the more dangerous of the methods, is ordinarily deemed negligent, in the absence of a showing of the existence of an emergency, sudden peril, or other circumstances justifying such choice. The fact that the less dangerous method takes longer and is inconvenient and attended with difficulties furnishes no excuse for knowingly encountering the peril." But, as stated in the later case of *Lagomarsino* v. *Market Street Ry. Co., supra,* page 392, this rule is not controlling "unless defendants can show that no inference other than one of plaintiff's negligence can reasonably be drawn from the facts."

The judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

SCHAUER, J.—I dissent. In my view the opinion of the District Court of Appeal, prepared by Mr. Justice Doran and reported in 161 P.2d 694, properly disposes of the controlling issues. The judgment should be reversed.