## UNITED SHOE MACHINERY CORPORATION v. PAINE.

Circuit Court of Appeals, First Circuit. May 31, 1928.

No. 2226.

1. Courts ⟲359—In personal injury action, rights of parties are to be determined by law of state where cause of action for personal injuries arose.

Rights of parties are to be determined in federal court by law of state in which cause of action for personal injuries arose.

2. Landlord and tenant ⟲162—Landlord, leasing distinct portions of building, retains control over common approach, and must exercise reasonable care in maintaining it.

A landlord, who leases distinct portions of a building having a common approach for different tenants, retains possession and control over the common approach, and must exercise reasonable care in maintaining it in suitable condition for tenants and those entitled to make use thereof in going to and from leased premises.

3. Landlord and tenant ⟲162—Landlord had duty of maintaining common approach free of ice and snow, particularly where icy condition was caused by water dripping from roof.

Where landlord rented portions of building to different tenants, its duty under the law of New Hampshire of exercising reasonable care in maintaining common approach was not limited to maintaining approach in suitable repair, but covered a negligent failure to maintain them in a reasonably safe condition, due to snow and ice or other substance thereon, particularly where building was so constructed that water from roof dripped on steps and caused icy condition, which could not be attributed to act of nature, but was due to landlord's negligence in failing to provide adequate eaves trough or appliance to take care of water.

4. Landlord and tenant ⟲165(1)—Plaintiff, injured by falling on icy common entrance steps, held not required to prove that landlord undertook to remove snow and ice.

In action against landlord for injuries from falling on common stairway at entrance of building leased to different tenants, it was not incumbent on plaintiff to prove, in order to establish landlord's duty, that landlord had actually undertaken to remove ice and snow from steps, and pursued a course of conduct such as would entitle plaintiff or tenants to rely on its doing so.

5. Appeal and error ⟲882(8)—Defendant was not prejudiced because plaintiff unnecessarily introduced evidence on immaterial issue.

Defendant was not prejudiced by fact that plaintiff was unnecessarily required to introduce evidence on issue which was immaterial, where evidence had been introduced because of defendant's insistence that such issue was material.

6. Trial ⟲260(1)—Refusal of requested instructions, substantially covered by instructions given, was not error.

Refusal of requested instructions, substantially covered by instructions given, was not error.

7. Trial ⟲252(1)—Instruction not applicable to evidence in case was properly refused.

Requested instruction, not applicable to any evidence in the case, was properly refused.

In Error to the District Court of the United States for the District of New Hampshire; George F. Morris, Judge.

Action by Walter L. Paine against the United Shoe Machinery Corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

James W. Remick, of Concord, N. H. (George T. Hughes, of Dover, N. H., on the brief), for plaintiff in error.

Jonathan Piper, of Concord, N. H. (William N. Rogers and Demond, Woodworth, Sulloway & Rogers, all of Concord, N. H., on the brief), for defendant in error.

Before BINGHAM and JOHNSON, Circuit Judges, and HALE, District Judge.

BINGHAM, Circuit Judge. This is an action to recover damages for personal injuries, which the plaintiff sustained, due to a fall while passing over a common stairway at the entrance of the defendant's building in North Conway, N. H. There was a trial by jury, and a verdict and judgment for the plaintiff.

The defendant was the owner of a one-story building in North Conway, leased to tenants. One portion of it was occupied by the Conway Wood Heel Company, one of its subsidiaries, for manufacturing purposes. The greater portion of the balance of the building was divided into offices, one of which was occupied by the Conway Box Company, likewise a subsidiary, one by the defendant, and one by Frank E. Kennett. The entrance to the building was over cement steps leading to a hallway located between the portion of the building occupied for manufacturing purposes and the portion occupied for office purposes, and the stairway and hallway were used in common by the tenants and their employees in going to and from the respective premises. The steps were uncovered, and the slope of the roof of the building was towards the steps. Under the eaves and above the steps was an open gutter or eaves trough, which had a tendency to fill up and freeze in winter, and throw dripping water on the top step, and form an icy surface there. The slant of the roof at that point and the fact that the building was heated increased the tendency of the water to be thrown upon the steps. Due to this construction, it was necessary in the winter time to frequently shovel and sand the steps, in order to render them safe.

The plaintiff was employed as a bookkeeper by Kennett and worked in the office occupied by him. While leaving the building in the course of his employment on the morning of February 2, 1926, he slipped on the top step and was injured. The plaintiff's evidence tended to show that ice had formed on that step from the drippings of the open gutter; that the steps had not been sanded; that it had snowed that morning, as well as the day before; that the ice that had formed on the top step was concealed from view by a slight coating of snow; and that as the plaintiff stepped down on this step he slipped and fell, because of the ice under the snow.

In addition to this building and the businesses of the Heel Company and the box company, the defendant had other property and business interests in Carroll county, New Hampshire, of which Mr. Kennett had charge as general agent of the defendant. He was also assistant treasurer of the Heel Company and of the Box Company. There were no written leases disclosing the terms under which the tenants occupied their respective portions of the building. In addition to its appearing that there was no lease of the stairway and hallway to any tenant, and that no tenant ever agreed to take care of the steps and hallway, there was evidence that the defendant, through its general agent, Kennett, undertook to maintain the steps in a safe condition for the tenants and their employees by having them cleared of snow and sanded. The testimony on this latter point was conflicting. The evidence in relation to it came largely from Mr. Kennett, and his testimony was in itself conflicting and contradictory. Nevertheless, there are portions of his testimony in which he testified positively that he had caused the snow and ice to be removed from the steps, and that his relation to the care of the steps had been in the capacity of agent for the defendant.

There are 22 assignments of error. The first 11 relate to the admission of evidence, the twelfth to its exclusion, the thirteenth to the court's refusal to grant the defendant's motion for a directed verdict, the fourteenth, fifteenth, sixteenth, seventeenth, and eighteenth to the refusal of the court to grant the defendant's requests for instructions, the nineteenth and twentieth to the charge and the twenty-first and twenty-second to the submission of the question of agency to the jury as a question of fact.

In its thirteenth assignment of error, the defendant relies upon two grounds, wherein it contends that the court erred in denying its motion for a directed verdict: (1) That the defendant did not reserve and/or exercise control of the common entrance; and (2) that it did not undertake by duly authorized agent to keep the steps free and clear from snow and ice, or sand the same. [1] As to its first ground, it contends that, when a landlord retains possession of the common entrance to leased premises, the law does not impose upon him a duty to use reasonable care to keep the common entrance in a safe condition, unless he is shown to have actually exercised control of the common entrance, and that even then the duty to use care to keep it reasonably safe extends only to general repairs, and does not impose on the landlord a liability for injuries resulting from temporary obstructions arising from natural causes, such as accumulations of ice and snow, unless he has agreed to maintain

the common stairway or entrance free from such obstructions, or has actually undertaken such duty, by entering upon its performance in a manner such as to entitle those using the common entrance to rely upon his performance of such duty.

In support of this contention the defendant cites cases from other states than New Hampshire, in which the cause of action arose, to wit, Woods v. Naumkeag Steam Cotton Co., 134 Mass. 357, 45 Am. Rep. 344; Looney v. McLean, 129 Mass. 33, 37 Am. Rep. 295; Nash v. Webber, 204 Mass. 419, 90 N. E. 872; Bell v. Siegel, 242 Mass. 380, 136 N. E. 109, 25 A. L. R. 1261; Caruso v. Lebowich, 251 Mass. 477, 146 N. E. 699; Palladino v. Domenico De Stefano, 258 Mass. 12, 154 N. E. 187; Purcell v. English, 86 Ind. 34, 44 Am. Rep. 255; Shindelbeck v. Moon, 32 Ohio St. 264, 30 Am. Rep. 584; Oerter v. Ziegler, 59 Wash. 421, 424, 109 P. 1058. But as the cause of action arose in New Hampshire the rights of the parties are to be determined by the law of that state and as generally understood and applied.

In the recent case of Gobrecht v. Beckwith, 82 N. H. 415, 135 A. 20, 52 A. L. R. 858, it appeared that the plaintiff and his wife were tenants occupying one room on the third floor of a block owned by the defendant; that upon that floor was a bathroom provided for the common use of the female tenants of the block; that it was a small inside room, without windows; that it had two doors, one of which was unused, and a transom over one of the doors; that when the doors were closed the transom was the only means for ventilation; that hot water was supplied by an instantaneous gas heater installed in the bathroom without a flue, and was operated by gas known as water gas, containing 30 to 40 per cent. of carbon monoxid, an extremely poisonous gas; and that on December 19, 1922, the plaintiff's wife, while taking a bath, was rendered unconscious by the gas coming from the heater, resulting in permanent injury to her health.

In that case the defendant requested the court to charge the jury that a landlord is under no legal duty to repair the leased premises, and that, in the absence of a warranty or deceit, the tenant takes the premises as he finds them, and cannot recover against the landlord for injuries received by reason of defects therein.

In answer to this, the court pointed out that the rule contended for was applied only in cases where the leased premises had passed out of the control of the landlord and into the possession and control of the tenant; that lack of control of the landlord was one of the essential elements necessary to bring a case within that rule. It was there said:

"The rule has never been applied in this state to those portions of the premises over which the landlord retains control and which he furnishes for the common use of his tenants, and, although it has never been expressly decided by this court, it has been generally understood by the bench and bar that the rule which has been laid down in other jurisdictions prevails here. That rule has been stated as follows:

" 'It is generally held that, where he (the landlord) retains possession of a portion of the leased premises for the use in common of different tenants, a duty is by law imposed upon him to use ordinary care to keep in safe condition this particular part of the leased premises, and, if he is negligent in this regard and a personal injury results to a tenant by reason thereof, he is liable therefor.' 16 R. C. L. 'Landlord and Tenant,' § 557.

"This rule has been applied in the trial of many cases in the superior court, and the reason why it has never been expressly stated as the basis of a decision by this court is apparently that no one heretofore thought of questioning it. * * * The recent case of Saad v. [Pappageorge] Papageorge, 82 N. H. 294, 133 A. 24, which involved an accident happening upon a common stairway, was decided upon the assumption that this was the law, and the court there said:

" 'The construction of the stairway was such that its use by very young children as a stairway might be found to be contemplated, and so some protection for use for that purpose would be required. The duty of care may therefore be found to be owing, although it cannot be told in detail how the intestate happened to break or fall through the defective board. If he met his mishap in connection with his descent of the stairs, the duty was applicable.'

"The law of this state, therefore, cannot be regarded as doubtful. The general rule above quoted prevails here."

The negligence there complained of as a basis of liability was the plan or method of construction, not the failure to repair.

[2] A landlord, who leases distinct portions of a building having a common approach for different tenants, retains possession and control over the common approach. Such is the holding in Massachusetts, as shown in the case of Flanagan v. Welch, 220 Mass. 186,

191, 107 N. E. 979, 981, where it is said:

"It may be taken to be now established that common hallways and stairways of a building which is let out in offices or tenements remain in the control of the landlord for the use of his tenants."

This is necessarily so, for the portion of the premises which the landlord does not lease to his tenants he retains possession and control of, and as the portion of the premises over which he retains possession and control has been provided by him as a common means of approach for use by his respective tenants, the duty arises or is implied that he will maintain the same in a suitable condition for their use, and of those entitled to make use of the same, in going to and from the premises leased.

As in the present case the leases to the tenants were of the distinct portions of the building occupied by them, and the landlord (the defendant) provided the steps and the hallway for the common use and benefit of all the tenants, there is no presumption that the tenants were to keep the steps and hallways in repair or suitable for use. On the contrary, the evidence shows there was no agreement by any of the tenants to do so. Readman v. Conway, 126 Mass. 374, 376.

[3] It being, therefore, the duty of the landlord to exercise reasonable care in the maintenance of common approaches, the question is: Whether that duty is restricted to maintaining the approaches in suitable repair, or covers negligent failure to maintain them in a reasonably safe condition due to the presence thereon of snow and ice or some other substance, rendering them dangerous for use?

It is true that the Massachusetts court has declined to hold a landlord responsible in damages for natural accumulations of ice and snow on common approaches, in the absence of evidence showing that he had agreed to provide against such a contingency, or had actually undertaken to do so by a course of action upon which the tenants had reason to rely. Nash v. Webber, 204 Mass. 419, 90 N. E. 872; Caruso v. Lebowich, 251 Mass. 477, 146 N. E. 699. In other words, that court has limited his duty, arising out of his possession and control of common approaches, to keeping and maintaining them in suitable repair, and one or two other states have apparently adopted a like rule. It seems to us, however, to be an anomalous doctrine, without logical foundation. The Connecticut court, in commenting upon this subject in the case of Reardon v. Shimelman, 102 Conn. 383, at page 388, 128 A. 705, 706 (39 A. L. R. 287), said:

"The duty of the landlord being to exercise reasonable care to prevent the occurrence of defective or dangerous conditions in the common approaches, the fact that a particular danger arose from the fall of snow or the freezing of ice can afford no ground of distinction. Indeed, the causes which are at work to produce it are no more natural causes than are those which, more slowly, bring about the decay of wood or the rusting of iron. To set apart this particular source of danger is to create a distinction without a sound difference."

We think the correct rule applicable to this situation was stated by Chief Justice Bigelow in the case of Sweeny v. Old Colony & Newport Railroad Co., 10 Allen, 368, 373, 374, 87 Am. Dec. 644, where, after stating the duty of a keeper of a shop or store, or of a keeper of an inn or other place of public resort, to provide means of safe ingress and egress to and from his premises for those having occasion to enter thereon, and his liability for injury which may happen by reason of any "negligence in the mode of constructing or managing the place of entrance and exit," he says:

"The general rule or principle applicable to this class of cases is, that an owner or occupant [one in possession and control] is bound to keep his premises in a safe and suitable condition for those who come upon and pass over them, using due care, if he has held out any invitation, * * * either express or implied, by which they have been led to enter thereon. * * * The gist of the liability consists in the fact that the person injured did not act merely for his own convenience and pleasure, * * * but that he entered the premises because he was led to believe that they were intended to be used by visitors or passengers, and that such use was not only acquiesced in by the owner or person in possession and control of the premises, but that it was in accordance with the intention and design with which the way or place was adapted and prepared or allowed to be so used. The true distinction is this: A mere passive acquiescence by an owner or occupier in a certain use of his land by others involves no liability; but if he directly or by implication induces persons to enter on and pass over his premises, he thereby assumes an obligation that they are in a safe condition suitable for such use."

This statement of the law has been approved and applied by the Supreme Court of New Hampshire in the case of Hobbs v. Blanchard & Sons Co., 75 N. H. 73, at page 80, 70 A. 1082, 18 L. R. A. (N. S.) 939.

In that case the plaintiff's intestate was a boy about 14 years of age. The defendant company was conducting large lumbering operations and employing many men in the township of Success, where they had lumbermen's camps in which entire families lived, many of them with children. The boy was invited by the superintendent in charge of the lumbering operations to visit at the camp, and there was evidence that this was done with the approval of the defendant. While at the camp he was killed by the explosion of sticks of dynamite, which one of the defendant's employees, who handled the dynamite, had placed beside a tree within 14 feet of the door to the building where the boy was. The boy, while making a sled, came in contact with the dynamite, which exploded. It was held that, "having established such a place of human abode, it could be found that the defendant impliedly invited visitors to come there to such an extent as would be reasonable, considering the station in life of the parties interested," on the theory that the men employed there had authority to invite a visitor "from the fact that the defendant undertook to there maintain for them a place of abode," and, if so found, it was "evident that there would be ample ground for finding that the defendant was negligent as to such invitees." There the danger was of a temporary nature, for the dynamite was negligently left exposed near the camp door after the arrival of the boy.

The defendant also had possession and control of the roof and open gutter over the common hallway and stairway, the propensities of which to discharge water on the stairway and render it dangerous in winter weather was well known. This in itself imposed a duty on the defendant to use due care to see that the stairway which it had provided for use by its tenants and their employees was reasonably safe for the use intended. The discharge of the water upon the steps was not an act of nature, but due to the negligent intervention of the landlord in providing an inadequate eaves trough or appliance to take care of the water. Bixby v. Thurber, 80 N. H. 411, 416, 118 A. 99, 29 A. L. R. 175; Watkins v. Goodall, 138 Mass. 533, 536, 537.

Then again in Massachusetts, where they hold that a landlord who retains control of common approaches is under no duty to the tenant to remove snow and ice which naturally accumulates on such approaches, it is held that other persons, strangers to the contract of letting, rightfully using the approaches, may recover for injuries received "from defects in the construction of the approaches" as well as for their want of repair. Readman v. Conway, 126 Mass. 374; Woods v. Naumkeag Steam Cotton Co., supra. But that court has intimated that a person using the common approaches as employee of the tenant, or for the purpose of transacting business with him, does so at the invitation, express or implied, of the tenant, and is not a stranger to the contract of letting, and that the duty of the landlord to such users is the same as that to the tenant. Coupe v. Platt, 172 Mass. 458, 52 N. E. 526, 70 Am. St. Rep. 293.

[4, 5] We are, however, of the opinion that the Massachusetts rule as to temporary dangers does not prevail in New Hampshire, and that it was not incumbent upon the plaintiff to prove, in order to establish a duty in his behalf, that the defendant had actually undertaken to remove the snow and ice from the steps and pursued a course of conduct such as would entitle him, or the tenants, to rely on its doing so. This being so, it becomes unnecessary to consider whether the evidence introduced at the trial was adequate to warrant a finding that Kennett was the authorized agent of the defendant in the control of the steps in question, and undertook to keep them in a safe condition for the tenants and their employees. It also renders it unnecessary to consider numerous exceptions to evidence introduced relating to that subject and here assigned as error, for the defendant's duty being otherwise established it is immaterial whether the evidence was adequate to establish the authority of Kennett. It surely did not prejudice the defendant, and would not have been introduced, but for its insistence and the ruling of the court that, in the absence of such proof, no duty would be cast upon it. Felch v. Railroad, 66 N. H. 318, 323, 324, 29 A. 557. This disposes of the second, third, fourth, seventh, ninth, and eleventh assignments of error, relating to the admission of testimony, and the twentieth, twenty-first and twenty-second, relating to the submission to the jury of the question of agency.

[6, 7] We find no error in the matters complained of in the first and fifth assignments, nor in the sixth, eighth, tenth, twelfth, fourteenth, fifteenth, seventeenth, and eighteenth assignments. So far as the latter assignments relate to refusals to grant the defendant's requests for instructions, it appears that some of them were given in substance, and the others concern matters covered by our discussion of the thirteenth assignment. The refusal to grant the instruction referred to

in the sixteenth assignment was proper; the request was not applicable to any evidence of the case. The instructions complained of in the nineteenth assignment put an undue burden upon the plaintiff. They did not prejudice the defendant, and much that was there said related to questions disposed of under the thirteenth assignment.

The judgment of the District Court is affirmed, with costs to the defendant in error.