[Civ. No. 15708.   Second Dist., Div. Three.   Nov. 14, 1947.]

ALICE MARY BUSBY, Appellant, v. HARRY SILVER-MAN et al., Respondents.

394

Byron R. Bentley for Appellant.

Sidney A. Moss and Robert E. Ford for Respondents.

VALLEE, J. pro tem.—In an action to recover damages for personal injuries sustained by plaintiff in falling down a flight of stairs while a tenant in the Barclay Manor, an apartment house owned and operated by defendant, Harry Silverman, plaintiff appeals from an order granting a new trial after a verdict in her favor.

Defendant's motion for new trial was based upon the ground, among others, of the insufficiency of the evidence to justify the verdict. The order of the trial court in granting the motion specified that the new trial was granted "as to all issues upon the grounds set forth in the motion and particularly on the ground that the evidence is insufficient to support said verdict and judgment."

It is well established that the trial court is not only authorized, but it is its duty, to carefully scrutinize the evidence on a motion for a new trial in cases where the evidence is claimed to be insufficient, and to grant a new trial whenever, in its opinion, the evidence is insufficient to support the verdict. The presumption is in favor of the order granting a new trial and against the verdict. (*Rosenberg* v. *George A. Moore & Co.*, 194 Cal. 392, 396 [229 P. 34].) An order granting a new trial will not be reversed except upon a showing of manifest abuse of discretion. The question before us, therefore, is whether it clearly appears that the trial court abused its discretion in granting the motion for new trial.

Briefly, the facts are these: At approximately 8:15 a. m., of July 18, 1945, plaintiff left her apartment on the third floor of the Barclay Manor for the purpose of going to her place of business, at which place she was due at 8:30. After waiting a considerable period of time for the automatic elevator, which at that time was in constant use, she decided to use the stairway "in order to keep from being late," which stairway was located in the north wing of the building near the elevator and was used in common with the other tenants. She proceeded without mishap down the stairway to the second floor. At the trial, reference was made to four lights on the second floor. Light No. 1 at the foot of the stairway from the third to the second floor. Light No. 2 was near the head of the stairway from the second to the first floor. Lights Nos. 3 and 4 are of no importance upon this appeal. There was another light not referred to by number at the foot of the stairway from the second to the first floor. No other person was present at this time. Plaintiff, in describing the happening of the accident, stated that she was not in a hurry and that she walked "very carefully" down the second floor hallway to the stairway which led to the first floor; that she noticed the light (Light No. 2) was out; that she turned left from this hallway and walked down two steps to a square landing, located just above the fifteen stairs leading down to the first floor; that she then "reached for the banister to take a step forward" and in reaching for it lost her "balance and went down" the entire fifteen stairs to the first floor landing. She further testified that she "looked" before she attempted to step down from the landing at the point where she lost her balance but the "outline of the step was not clear; it was not visible. . . . It was very confusing due to the design and the darkness of the carpet"; that it was "too dark" even to see the design of the carpet; that she "wasn't able" to see the exact location of the banister leading below the landing. On cross-examination she testified that she had lived in the Barclay Manor for approximately 10 or 12 years before the accident; that she had used the stairs frequently and that there was no change in the location of the banisters during the time she had lived there; that the light near the steps leading to the landing (Light No. 2) was "not burning" and the "landing was dark"; that there was a "light at the bottom of the stairway" on the first floor, but it did not illuminate the landing platform on which she stood; that she could not see "clearly" the edge of the plat-

form or the first two or three steps below the platform; that she could not see the banister; that she "reached for the banister to support" her, as she had always done, and while she could not see it, she "knew it was there." In a matter of seconds after the fall, Mrs. Harrison, manager of the apartment, and a Mr. Hansen, an employee, appeared. Plaintiff was then carried by Mr. Hansen to her room and Mrs. Harrison immediately called a doctor.

Appellant contends that the court erred in granting the new trial on the ground of insufficiency of the evidence because "there was no substantial conflict in the evidence and no substantial evidence in support of a verdict for the defendant." A careful perusal of the record in this case convinces us that this contention is without merit.

■ The duty which is imposed upon an apartment house owner is one of ordinary care to see that the premises used in common with other tenants are kept in a reasonably safe condition. The principles relating to the landlord's duty in this regard are succinctly stated in *Harris* v. *Joffe*, 28 Cal. 2d 418, 423 [170 P.2d 454] : "The general rule that a landlord is not liable to a tenant for injuries due to the defective condition or faulty construction of the demised premises in the absence of fraud, concealment or covenant, is subject to exception. When a portion of the premises is reserved by the landlord for use in common by himself and his tenants, or by different tenants, a duty is imposed upon the property owner to use ordinary care to keep that particular portion of the premises in a safe condition. (*Bock* v. *Hamilton Square Baptist Church*, 219 Cal. 284, 287 [26 P.2d 7] ; *Dorfer* v. *Delucchi*, 61 Cal.App.2d 63, 64 [141 P.2d 905] ; *Turner* v. *Lischner*, 52 Cal.App.2d 273, 277 [126 P.2d 156] ; *Reiman* v. *Moore*, 42 Cal.App.2d 130, 136 [108 P.2d 452] ; *Kossine* v. *Styliano*, 40 Cal.App.2d 721, 723 [105 P.2d 952] ; *Ellis* v. *McNeese*, 109 Cal.App. 667, 670 [293 P. 854].) ■ But a landlord may not be charged with responsibility for a defective condition unless he had actual knowledge of the condition, or it has existed for such a period of time as to justify the conclusion that, in the exercise of ordinary care, he should have known of its existence within such time as would have given him a reasonable opportunity to make repairs. (*Mondine* v. *Sarlin*, 11 Cal.2d 593, 597 [81 P.2d 903] ; *McKellar* v. *Pendergast*, 68 Cal.App.2d 485, 491 [156 P.2d 950] ; *Owen* v. *Beauchamp*, 66 Cal.App.2d 750, 752 [152 P.2d 756] ; *Van Wye* v. *Robbins*, 48 Cal.App.2d 660, 662 [120 P.2d 507] ;

*Wills* v. *J. J. Newberry Co.*, 43 Cal.App.2d 595, 599 [111 P.2d 346] ; *Kossine* v. *Styliano, supra,* p. 724.) ''

At common law no duty was imposed upon a landlord to illuminate the common passageways over which he reserved control in the absence of defective conditions or those of peculiar danger calling for special warnings. (See cases collected in 97 A.L.R. 220, 232 ; 75 A.L.R. 154, 166 ; 58 A.L.R. 1411, 1419 ; 39 A.L.R. 294, 302 ; 25 A.L.R. 1273, 1312.) Section 17819 of the Health and Safety Code of the State of California provides that ''In every apartment house with more than two apartments above the first floor, and in every hotel there shall be installed and kept burning from sunrise to sunset throughout the year artificial light sufficient in volume to illuminate properly every public hallway, public stairway, fire escape egress, elevator, public water-closet compartment, or toilet room, in any part of which there is insufficient natural light to permit a person to read.''

On the principal issue involved in the action before the trial court, i. e., whether defendant failed to keep burning artificial light sufficient in volume to illuminate properly the hallways and stairways, and particularly the area in and near the second floor stairway over which plaintiff fell, the record reveals a decided conflict in the evidence. It was stipulated at the trial that no natural light reached the landing and the stairway on the second floor and that the only illumination came from artificial lighting. The light fixtures which were used throughout the building and in and near the area of the second floor landing and stairway, were those the electric globes of which were covered with frosted light reflectors. Plaintiff admitted that two ceiling lights in and near the area where she fell were burning on the morning of the accident. One of these, Light No. 1, was located east of the second floor stairway down which she fell, and the other was located near the foot of the stairway on the first floor. The testimony of the witnesses, however, varied as to the volume of the light globes used at both locations, the degree of illumination being referred to as ''very dark,'' ''very dim'' and ''very poor.'' The ceiling light fixture on the second floor, upon which plaintiff placed great emphasis during the trial, was that referred to as Light No. 2. This light fixture served to illuminate the stairway and landing. It was located 6 feet and 6 inches from the corner of the stairway and landing. It is this light fixture which plaintiff testified was not burning at approximately

8:15 a. m. of July 18, 1945, the morning of the accident, and which several of plaintiff's witnesses testified was not on at various other times prior to plaintiff's accident. In contradiction to this evidence, defendant introduced evidence by Mrs. Harrison, manager of the apartment, to the effect that on the morning of the accident Light No. 2 contained a 25-watt globe and that the light fixture at the foot of the stairway on the first floor contained a 40-watt globe, and both these light fixtures were burning a few minutes before Mrs. Busby's fall. A Mr. Hansen, employed by defendant about three months before plaintiff's accident as houseman and in charge of "all electrical equipment," corroborated Mrs. Harrison's testimony in this regard. He testified further that Light No. 2 and the light at the foot of the stairway on the first floor were on both before and after plaintiff's fall; that his "instructions at the time from Mr. Silverman and from Mrs. Harrison were that the lights at the top and bottom of the stairs were to be left lighted at all times day and night"; that after the fall "Mrs. Busby at that time said she was in a hurry, that she didn't have time to wait for the elevator"; that he had not worked for defendant "since September, 1945." There was also evidence that the landing, stairway and banister were in the same condition at the time of the accident as they were during all the time Mrs. Busby was a tenant in the apartment. Defendant introduced an expert witness who testified that the steps of the stairway over which plaintiff fell were of uniform width and height and that in his opinion the construction of the stairway, including the landing, the banister and the newel posts, conformed to scientific, customary, and standard practice of architecture in apartment houses of this class and character.

After the close of plaintiff's case the jury was taken to the scene of the accident and under the instructions of the trial judge various tests were made showing the visibility under the degrees of illumination testified to by the witnesses. Light No. 1 was tested with a 15-watt globe and a 25-watt globe. Light No. 2 was tested with a 25-watt globe. The light at the foot of the stairway on the first floor was tested with a 40-watt globe and a 25-watt globe. Light No. 2 was completely turned off.

The burden of proof was upon plaintiff to prove by a preponderance of the evidence that defendant was guilty of some negligent act or omission proximately contributing to her injuries. Even though the jury might have believed that

Light No. 2 was out at the time of the accident, as testified to by plaintiff, nevertheless that condition, of itself, was not sufficient to charge defendant with a lack of ordinary care to keep the premises in a safe condition, in the absence of evidence showing knowledge of this condition on defendant's part, either actual or constructive. In an attempt to prove that Light No. 2 was customarily turned off, and that this situation was known to defendant, William Allen, a former employee of defendant and a witness for plaintiff, testified that during his employment he had been instructed by defendant to turn off Light No. 2 and that this situation existed for a long period of time. Mr. Allen's testimony was to the effect that he had been employed as a desk clerk for defendant in 1942; that he had left defendant's employ on July 13, 1944 (a period of more than a year before plaintiff's accident); that defendant had given him certain instructions respecting the lights; "At that time in the morning, it was about 7 o'clock my instructions was to turn out the lights with the exception of the corner light and the elevator light on all floors"; that he was instructed to leave Light No. 1 on; that "Every other light [every alternate light] was supposed to be on from that corner light [Light No. 1]"; that Light No. 2, being the next light in order, was turned out. The trial judge had the right to accord this testimony little or no weight because of its remoteness and in view of the positive testimony of several witnesses who were on the premises at the time of the accident that both before and after plaintiff's fall Light No. 2 was on.

Where, as in the instant case, there is a material conflict in the evidence so that a verdict for the moving party, if returned, would have had evidentiary support, the order granting the new trial will not be disturbed on appeal. (*Dempsey* v. *Market Street Ry. Co.*, 23 Cal.2d 110, 113 [142 P.2d 929]; *Myers* v. *Moose*, 36 Cal.App.2d 739, 742 [98 P.2d 551]; *Anderson* v. *Lang*, 42 Cal.App.2d 725, 727 [109 P.2d 981]; *Grover* v. *Sharp & Fellows etc. Co.*, 66 Cal.App.2d 736 [153 P.2d 83].)

It is evident from the record that there was no abuse of discretion on the part of the trial court in granting the motion for new trial.

The order granting a new trial is affirmed.

Shinn, Acting P. J., and Wood, J., concurred.