[Civ. No. 16236.   Second Dist., Div. Three.   Sept. 20, 1948.]

RUTH M. SWEELEY, Appellant, v. E. O. LEAKE et al., Respondents.

Zagon, Aaron & Sandler for Appellant.

E. O. Leake, J. J. Leake, in pro. per., and Brown, Beery & Rognes for Respondents.

VALLÉE, J.—Appeal by plaintiff from an order granting a motion for a new trial in an action to set aside a chattel mortgage upon certain furniture, furnishings and equipment of Dr. Merle E. Sweeley and used by him in the practice of medicine, securing a note in the sum of $2,500, executed by him and made payable to defendants E. O. Leake and J. J. Leake, and an assignment executed by Dr. Sweeley to defendants E. O. Leake and J. J. Leake of $2,025, now in the possession of the defendant Byram, County Treasurer.

The motion for new trial was heard and passed upon by a judge other than the one who presided at the trial of the case and was based upon the following grounds: (1) insufficiency of the evidence, (2) the decision was against the law, and (3) errors in law occurring during the trial and excepted to by the defendants. The order appealed from granted the motion ''on all grounds given in the notice of intention to move for new trial including insufficiency of the evidence to justify the decision.''

Briefly, the events leading up to the filing of the instant action, as revealed by the pleadings and evidence, are as follows:

In October, 1943, Dr. Sweeley came to California from Illinois and opened an office for the practice of medicine.

Considerable marital difficulties existed between Dr. Sweeley and his wife, Ruth M. Sweeley, who was then residing in Illinois. On September 7, 1944, Dr. Sweeley retained defendants E. O. Leake and J. J. Leake as his attorneys. In October of that year they filed on behalf of Dr. Sweeley, an action for divorce. His wife cross-complained for separate maintenance. Pending the trial and determination on the complaint for divorce and cross-complaint for separate maintenance, an order was made directing Dr. Sweeley to pay $225 monthly for the support of his wife and their minor child. An appeal was taken by him from this order. A further order was made staying execution, conditioned upon the depositing by Dr. Sweeley with the clerk of the court of the sum of $225 each month until the determination of the appeal. On June 21, 1946, approximately two months before the filing of the instant case, the order appealed from was reversed. (*Sweeley* v. *Sweeley*, 28 Cal.2d 389 [170 P.2d 469].) The accumulated deposits made pursuant to the order staying execution amounted to $2,025.

Between the 20th and the 27th of September, 1945, a trial was had upon the complaint for divorce and the cross-complaint for separate maintenance. On October 16, 1945, a notice from the clerk of the trial judge was mailed to the defendants Leake informing them that the trial judge had determined the litigation in favor of the cross-complainant wife on her cross-complaint for separate maintenance. On the 3d or 4th of November, 1945, the defendants Leake received a copy of the proposed findings of fact and conclusions of law and the decree for separate maintenance. On November 15, 1945, the decree was signed and filed. It directed Dr. Sweeley to pay for the support and maintenance of his wife and minor child the sum of $400 a month, and further provided that within 30 days he assign to his wife certain accounts receivable of the face value of not less than $9,000, or in lieu thereof, and within six months after the date of the decree, to pay to his wife the sum of $8,000. The decree further provided that so long as the marriage between the parties remained in force all of his earnings and accumulations were to continue to be community property. No payments were ever made by Dr. Sweeley pursuant to the decree. The record does not indicate when Dr. Sweeley left the State of California, but there is evidence to the effect that in the month of December, 1945, he was sojourning in Mexico. Thereafter, his wife sought execution on the judgment in the sep-

arate maintenance action, which execution was returned unsatisfied .

On August 22, 1946, the wife, Ruth M. Sweeley, filed the instant action. Dr. Sweeley was not made a party defendant since he was outside the jurisdiction of the court. The gist of the complaint was that Dr. Sweeley had executed a promissory note, dated November 1, 1945, in the principal sum of $2,500, payable to defendants Leake, which note was secured by a chattel mortgage, dated November 1, 1945, but not acknowledged until November 28, 1945, upon the furniture, furnishings and equipment used by him in his practice of medicine, and that he likewise had executed an assignment to defendants Leake of the fund of $2,025, deposited by him to stay the execution of the order directing him to pay temporary alimony pending the determination of the appeal taken from the order; that the execution of these instruments was made "without consideration and with the intent to hinder, delay and defraud the creditors of the said Merle E. Sweeley, including this plaintiff," and that the defendants E. O. Leake and J. J. Leake accepted the note and chattel mortgage and assignment "with knowledge of the said fraudulent intent on the part of said Merle E. Sweeley"; that these instruments were made by Dr. Sweeley after the entry of the decree of separate maintenance and were made by him with the knowledge that the assets sought to be affected by these instruments were the only assets he had in this state which could be subject to execution to satisfy the separate maintenance judgment, other than certain accounts receivable which he had succeeded in removing from the jurisdiction of the court. Defendants Leake file a joint answer, denying the aforesaid allegations and alleging that at the time of the execution of the disputed instruments, Dr. Sweeley was indebted to them for professional services rendered; that at that time they agreed to render such additional services as might be necessary to complete the disposition of the action between Dr. Sweeley and his wife; that the instruments were executed to secure the payment of the reasonable value of all services rendered and to be rendered to Dr. Sweeley; that the reasonable value of the services rendered by them was the sum of $5,000.

Upon these pleadings the action went to trial. Findings were made in favor of the plaintiff and were to the effect that the instruments were executed by Dr. Sweeley after the entry of the decree of separate maintenance without adequate

consideration and with the intent to hinder, delay and defraud his creditors, and that the defendants Leake received the instruments with knowledge of the fraudulent intent on the part of Dr. Sweeley; that by reason of the fact that the furniture, furnishings and equipment of Dr. Sweeley were exempt from the execution (Code Civ. Proc., § 690.4), plaintiff could not complain of the transfers irrespective of the intent on the part of Dr. Sweeley in making such transfers. The judgment decreed that the purported assignment was fraudulent and void, that defendants Leake had no interest therein as against plaintiff, and made the fund subject to a levy of execution upon the judgment for separate maintenance. Defendants Leake then filed a motion for new trial, which was granted and an order entered accordingly. It is from this order that plaintiff appeals.

The principles of law applicable to an appeal from an order granting a motion for new trial are well established. ■ The presumption is in favor of the order granting a new trial and against the judgment. (*Rosenberg* v. *Moore & Co.*, 194 Cal. 392, 396 [229 P. 34] ; *Busby* v. *Silverman*, 82 Cal.App.2d 393 [186 P.2d 442].) ■ When a new trial is granted on the ground of insufficiency of the evidence, an appellate court will not interfere with the order in the absence of a showing of a manifest or unmistakable abuse of discretion. ■■ The trial court, in hearing such motion, is not bound by the rule of conflicting evidence. It must weigh all the evidence and determine the just conclusions to be drawn therefrom, and its ruling will not be disturbed on appeal where there is a conflict in the evidence or where there is substantial evidence which would support a judgment in favor of the moving party. (*Hames* v. *Rust*, 14 Cal.2d 119, 124 [92 P.2d 1010], and cases cited therein.) ■ The fact that the motion in the instant case was heard and determined by a judge other than the one who presided at the trial does not extend the power of this court in reviewing the matter. The judge hearing the motion stands in the shoes of the former judge and has the same power and is charged with the same duty as if the motion had come before the former judge. (*Wendling Lbr. Co.* v. *Glenwood Lbr. Co.*, 153 Cal. 411, 417 [95 P. 1029] ; *Churchill* v. *Flournoy*, 127 Cal. 355, 362 [59 P. 791].)

■ The record is replete with substantial evidence which would have supported a judgment in favor of the moving parties, and it cannot be said as appellant contends, that the court erred or abused its discretion in granting the new trial.

Defendant E. O. Leake, called as a witness by plaintiff under section 2055, Code of Civil Procedure, offered the only evidence with respect to the circumstances leading to the execution of the note, chattel mortgage and assignment. He testified that he and defendant J. J. Leake had been retained by Dr. Sweeley as attorneys in connection with his marital difficulties. He testified at great length and in great detail concerning the extensive legal services performed by them in connection with Dr. Sweeley's matter, including, among other activities, the following: preparation of all necessary papers in the divorce action and the action for separate maintenance; the exact number of court appearances, not only prior to and subsequent to the trial of the action, but during the trial; the taking of an appeal from the order awarding temporary alimony to the District Court of Appeal, necessitating a great deal of research, filing of briefs, and a court appearance for purpose of argument, the filing of a petition for hearing in the Supreme Court, and an appearance for the purpose of argument, which appeal resulted in a reversal of the order in favor of their client; many conferences with Dr. Sweeley and others. He testified that Dr. Sweeley had given them certain amounts of cash at different occasions,—"$25, and $125, and then another time $250," all of which were used up in costs; that a retainer had not been asked of Dr. Sweeley "because practically all this time he was putting up this $225 a month"; that, however, "either the last day or two of October, or the first day of November, 1945" he had a conversation with Dr. Sweeley concerning fees and told him he would like "some money on account," even though the case had not been completed; that Dr. Sweeley stated "he could not pay me anything at that time in cash, and I told him I would like to have some kind of security. We discussed the amount, and I told him I believed my services were reasonably worth up to that time around $4,000, but that there was some more work to do and it would probably run between $4,500 and $5,000 altogether. And he said . . . he was perfectly willing to give me anything he had but he couldn't pay me in cash at that time. I suggested to him he give me an assignment of the moneys which were on deposit with the county clerk. I felt reasonably sure I would get a reversal there, but it was still in litigation. And he said that was perfectly agreeable, and I told him I would also like to have a chattel mortgage on his office equipment, some-

thing so I would be sure of being paid. And he said, all right, go ahead and draw them up. Which I did''; that at that time there was no discussion concerning Dr. Sweeley's leaving California; that the note, chattel mortgage and assignment were dictated by him on November 1st;, that he again saw Dr. Sweeley on November 28th, when he executed the chattel mortgage and assignment; that the first time Dr. Sweeley made a statement to him that he was planning to leave California was ''either the 29th of November or the 28th, when he came in to execute the documents or about that time.'' He further testified that since 1912 he had been actively engaged in California in general civil practice, specializing in trial work, and that, in his opinion, the reasonable value of the services rendered was in excess of $6,000.

█ Fraud is never presumed but must be affirmatively established. The evidence must amount to proof of fraud, and where the circumstances of the transfer comport equally with the theory of honesty and fair dealing, 'fraud will not be found. (*Hedden* v. *Waldeck*, 9 Cal.2d 631, 636 [72 P.2d 114] ; *Levy* v. *Scott*, 115 Cal. 39, 42 [46 P. 892] ; 12 Cal.Jur. § 96, p. 1057.) █ The presumption is always in favor of fair dealing except, perhaps, where confidential relations are involved. This presumption has been held to approximate in strength that of innocence of crime. (*Hedden* v. *Waldeck*, *supra*; 12 Cal.Jur. § 71, p. 816.)

The evidence which we have recited would have been sufficient to support a judgment in favor of the defendants. As heretofore stated, the only evidence regarding the circumstances under which the instruments were drawn and executed was testified to by defendant E. O. Leake. This testimoney is unassailed in the record. The judge who heard the motion was warranted in concluding that the evidence disclosed no irregularities from which an inference of fraud on the part of the parties could be reasonably drawn; that the instruments executed by Dr. Sweeley were given for a valuable consideration; and that the transactions were made in good faith and without intent to give any fraudulent preferences. As the court stated in *Hedden* v. *Waldeck*, *supra*, page 638: ''The attorneys were entitled to a reasonable fee for their services. In case their client owned no other property, they had the right to take in payment the property in controversy (*Hibernia Sav. & Loan Soc.* v. *Belcher*, 4 Cal.2d 268 [48 P.2d 681]), and the transaction may not be declared fraudulent for the reason that by deeding the property the

client was rendered insolvent. (*Hibernia Sav. & Loan Soc.* v. *Belcher, supra.*) It is presumed that the attorneys, in fixing their fees, acted honestly, and only asked of their client fees which they considered reasonable. The trial of the cases in the superior court consumed nine days. The record on appeal was voluminous. The amount involved was large, and the issues, in addition to involving property of considerable value, seriously reflected on the honesty and integrity of their client. The attorneys are reputable members of the bar of this state and then and during a number of years preceding said transaction enjoyed a lucrative practice. No attempt was made to assail their reputation for honesty and integrity.''

No abuse of discretion is shown.

Order affirmed.

Shinn, P. J., and Wood, J., concurred.