**PANAMA CANAL COMPANY,**
Appellant,

v.

**Marian WAGNER, Appellee.**
No. 15581.

United States Court of Appeals
Fifth Circuit.
June 5, 1956.

Francis F. Sulley, Atty., David J. Markum, Panama Canal Co., Paul A. Bentz, Balboa Heights, Canal Zone, Maurice M. Morton, Ancon, Canal Zone, for appellant.

Woodrow De Castro, Ancon, Canal Zone, for appellee.

Before HUTCHESON, Chief Judge, and RIVES and BROWN, Circuit Judges.

RIVES, Circuit Judge.

Appellee was a tenant in an apartment building owned by appellant,[1] and the rear stairs of which were maintained by

---

1. The Panama Railroad Company was redesignated Panama Canal Company by the Act of September 26, 1950, 64 Stat. 1038. See Historical Notes to 48 U.S. C.A. §§ 1305–1314a and to 31 U.S.C.A. § 846. Though wholly owned by the Government, it is subject to suit. Panama R. Co. v. Curran, 5 Cir., 256 F. 768, 772; Panama R. Co. v. Minnix, 5 Cir., 282 F. 47.

appellant for the common use of appellee and other tenants. They were made of concrete with a concrete "parapet" running along the outside on which the hand could be rested but too large to grasp. Several of the concrete steps were worn, broken, and jagged "as far as maybe three inches or more." The stairs were not lighted.

Nine days after her tenancy began, appellee attempted her first night time descent of said stairs. Carrying a paper bag containing her kitchen garbage clutched to her body with her left arm, appellee placed her right hand on the concrete "parapet" for support and attempted to go down the stairs. As she "was stepping on a piece which had broken off" she began to fall, causing her to cast her weight on the supporting right hand and dislocate the "carpal" bone in her right wrist. Her resultant damage, the district court, trying the case without a jury, found to be $1746.50, but awarded her a recovery of only one-third of that amount or $582.16, after finding, "That the want of ordinary care attributable to the plaintiff as proximately contributing to plaintiff's injury and damages is in the proportion of 66⅔%."

Appellant's specifications of error will be considered in order.

"Specification of Error No. 1: The court erred in that its finding of negligence on the part of appellant was based on the application of legal standards not recognized in applicable landlord-tenant law."

■ The general rule is thus stated in 2 Restatement Torts, § 360:

"A possessor of land, who leases a part thereof and retains in his own possession any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for bodily harm caused to them by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe." [2]

■ The district court found, "that the defective condition of the stair coupled with the failure to illuminate constituted a lack of ordinary care on the part of the defendant which amounted to negligence that was the proximate cause of the plaintiff's injury;" substantially, we think, following the recognized standard. Appellant complains that, in other parts of its opinion, the district court referred to "the degree of care that is due from the defendant to maintain the reserved passageway in a *safe* condition" (emphasis supplied), and thereby made the landlord an insurer of the tenant's safety, that, "The selection of such a standard, the cases hold, erroneously burdens a landlord to so maintain his premises that a person could not be hurt at all." Appellant, in our opinion, is hypercritical, for in strikingly similar situations "safe" and "reasonably safe" have been held to be synonymous and interchangeable expressions. [3]

■ The appellant further insists that the evidence did not sufficiently show that it had notice of the defective condition, a reasonable opportunity thereafter to make repairs, and then failed in its duty. True, the evidence did not establish how long before her injury the appellee notified the appellant by telephone that the steps were broken. That insuffi-

2. See also, Busby v. Silverman, 82 Cal. App.2d 393, 186 P.2d 442; Reiman v. Moore, 42 Cal.App.2d 130, 108 P.2d 452; State of Maryland for Use of Pumphrey v. Manor R. E. & T. Co., 4 Cir., 176 F.2d 414, 417; United Shoe Machinery Corporation v. Paine, 1 Cir., 26 F.2d 594, 597, 58 A.L.R. 1398; 32 Am.Jur., Landlord & Tenant, §§ 688–704; 52 C.J.S., Landlord & Tenant, § 417 b.

3. Jones v. Bridges, 38 Cal.App.2d 341, 101 P.2d 91, 93; Popejoy v. Hannon, Cal. App., 216 P.2d 521, 525; 38 Words & Phrases, Safe, p. 10, and pocket supplement.

ciency, however, was more than supplied by the testimony of Mr. Fields, appellant's maintenance inspector, to the effect that he inspected the stairs two weeks before appellant moved in and again six days after the accident and that the condition was approximately the same on each inspection.

"Specification of Error No. II: The court erred in holding that appellant was obligated to keep the common premises in question lighted."

 In finding the appellant guilty of negligence, the district court considered not only the failure to light but "the defective condition of the stair coupled with the failure to illuminate." Clearly, the two together could constitute such a dangerous condition as to render the landlord liable.[4]

"Specification of Error No. III: The court erred in considering subsequent acts of repairs on the part of appellant (a) as being indicative of appellant's negligence, and (b) as being indicative of the condition of the steps at the time of the alleged injury."

 The district court complied with the written request and stipulation of the parties [5] to make an ocular inspection of the stairs, as a result of which it stated:

"The ocular inspection made by the Court is highly indicative that plaintiff's version is correct for the lines of repair between the new concrete and the old are plainly visible and tend to show that the edges of the steps had been extremely rough before reparations."

Appellant, having requested the court to inspect the stairs, cannot now complain of the inferences and conclusions drawn by the court from such inspection. As to the photographs, we agree with the following observation of the district court:

"The defendant contends in its brief that the Court erred in allowing to be introduced the photographs by the plaintiff to show the steps in their present condition to establish that repairs had been made. It argues that both the method of introduction and the purpose were erroneous but in view of the stipulation between counsel that the Court make an ocular inspection and in the absence of a jury, it is believed that the introduction of the evidence is in no wise prejudicial."

"Specification of Error No. IV: The court erred in finding that appellee had not assumed the risk since the doctrine of assumption of risk is (a) available in the Canal Zone and (b) is applicable on the basis of the facts found by the court."

On this issue, the district court concluded:

"The Court finds then that a complaining tenant, fearful of health problems, negligently attempted to negotiate the defective and unlighted stairway negligently maintained by the defendant and does not think that the plaintiff's negligence was such that she should be completely precluded from recovery.

"She knew of the defects in the stairway and she knew it was dark but she did not acquiesce in them

---

4. Busby v. Silverman, footnote 2, supra; 52 C.J.S., Landlord & Tenant, § 417, p. 33; 32 Am.Jur., Landlord & Tenant, § 701.

5. "That in view of the importance of conveying to the Court an accurate presentation of the back stairs of house 771, apartment 'A', San Pablo Street, Balboa, Canal Zone, upon which stairs the alleged injuries are alleged to have been sustained, and of the location, structure, de-

sign, and appearance of the said back stairs, and of the location, structure, design, and appearance of the lights in and adjacent to the said back stairs, the Court is hereby requested to make an ocular inspection at its convenience of the back stairs of said house 771, apartment 'A', San Pablo Street, Balboa, Canal Zone, accompanied only by proctors for both parties, for the purpose of assisting the Court in following the evidence to be introduced at the trial of the cause."

and she felt that her familiarity with the stairway would permit her to make a safe descent and although erroneous was not an unnatural assumption and showed no reckless disregard or such a degree of negligence that would preclude her recovery in the face of the degree of care that is due from the defendant to maintain the reserved passageway in a safe condition."

"Assumption of risk" is a term with at least four meanings.[6] In the first two meanings explained by Prosser, footnote (6), *supra*, it is used simply as another name for non-negligence.[7] In those senses it was fully considered by the district court.

The Canal Zone Code expressly treats of assumption of risk in master and servant cases.[8] On the other hand, the section prescribing the general responsibility for negligent acts, Title 3, § 977,[9] appears not to contemplate any affirmative defense of assumption of risk unless the person has willfully brought the in-

6. " 'Assumption of risk' is a term which has been surrounded by much confusion, because it is used by the courts in at least four different senses, and the distinctions seldom are made clear. In its simplest and primary sense, it means that the plaintiff has given his express consent to relieve the defendant of an obligation of conduct toward him, and to take his chance of injury from a known risk. The result is that the defendant is simply under no legal duty to protect the plaintiff. A second, and closely related meaning, is that the plaintiff, with knowledge of the risk, has entered voluntarily into some relation with the defendant which necessarily involves it, and so is regarded as tacitly or impliedly agreeing to take his own chances. Thus a spectator entering a baseball park may be regarded as consenting that the players may proceed with the game without taking precautions to protect him from being hit by the ball. Again the legal result is that the defendant is simply under no duty.

"In a third type of situation the plaintiff, aware of a risk created by the negligence of the defendant, proceeds voluntarily to encounter it—as where, for example, a workman who finds that a machine has become dangerous and that his employer has failed to repair it, continues to work at the machine. He may not be negligent in doing so, since his decision may be an entirely reasonable one, and he may even act with unusual caution because he knows the danger; but the same policy of the common law which finds expression, as to intentional torts, in the doctrine that no wrong is done to one who consents will bar him from recovery where damage results from a risk which he has accepted and brought upon himself.

"To be distinguished from these three situations is the fourth, in which the plaintiff's conduct in encountering a known risk is itself unreasonable, and amounts to contributory negligence. There is negligence on both sides; and the plaintiff is barred from recovery, not only by his 'implied consent' to take the chance, but also by the policy of the law which refuses to allow him to impose upon the defendant a loss for which his own fault was at least in part responsible. The plaintiff's conduct in accepting the risk may be unreasonable because the danger is out of all proportion to the interest he is seeking to advance, as where he consents to ride with a drunken automobile driver in an unlighted car on a dark night, or dashes into a burning building to save his hat. Or, even after accepting a very reasonable risk, he may fail to exercise proper care for his own protection against that risk. In such cases, both assumption of risk and contributory negligence are available as defenses." Prosser on Torts, 2nd ed., pp. 303, 304.

7. See also, Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 57, et seq., 63 S.Ct. 444, 87 L.Ed. 610.

8. Canal Zone Code, approved June 19, 1934, Title 3, § 1312.

9. "977. *Responsibility for willful acts, negligence, etc.*—Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has willfully brought the injury upon himself. Want of ordinary care on the part of the injured person shall not bar a recovery, but the damages shall be diminished by the court or jury in proportion to the want of ordinary care attributable to such person. The extent of liability in the cases covered by this section is defined by the chapter on compensatory relief." Title 3, § 977, Canal Zone Code.

jury upon himself, and that is not contended.

Appellant insists that, nevertheless, the defense of assumption of risk remains available, relying on the fact that the Canal Zone Code was patterned after the California Code and on the holding in In re Apple, 66 Cal. 432, 6 P. 7, 9, that "where the Code is silent, the common law governs."

 Admittedly, the common law may be resorted to for aid in interpreting the provisions of the Code,[10] for example in determining the meaning of the terms used in Title 3, § 977, heretofore quoted, footnote 9, *supra*. The Canal Zone Code differs, however, in significant respect from the California Code after which it was patterned. The Act approved March 21, 1872 to establish a Civil Code for California contains no language similar to the Act of Congress of June 19, 1934, H.R. 8700, Public No. 431, Chapter 667, "To establish a Code of Laws for the Canal Zone and for other purposes", providing:

> "Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the seven titles hereinafter set forth shall constitute the Code of Laws for the Canal Zone and shall, for all purposes, establish conclusively, and be deemed to enbrace, all the permanent laws relating to or applying in the Canal Zone in force on the date of enactment of this Act, except such general laws of the United States as relate to or apply in the Canal Zone."

Such a positive and unambiguous enactment leaves no room to doubt that the Congress established a true Code of Laws for the Canal Zone, and not simply a compilation subject to being supplemented by the common law. We hold, therefore, that in ordinary negligence actions covered by Title 3, § 977, of the Canal Zone, heretofore quoted, footnote 9, *supra*, the affirmative defense of assumption of risk is not available when the conduct is not so gross as to amount to willfully bringing on the injury.

Chief Judge Hutcheson and Judge Brown think that, of appellant's five specifications of error, only the first four require consideration by us; that this is because our holding, that the judgment must be affirmed for the reasons set forth in our discussion of these specifications, and our rejection of the trial court's apparent view that, but for the "captive tenant" theory advanced arguendo, plaintiff would under the Canal Zone Code be charged with assumed risk as a matter of law, makes completely innocuous and therefore renders unnecessary a consideration of the claimed error thus set forth in appellant's fifth specification of error:

"Specification of Error No. V: The court erred (a) in taking 'judicial notice' of the never-pleaded, never-argued and demonstrably incorrect status of appellee as a 'captive tenant' and (b) in deciding the case upon such theory in such manner, thereby wrongfully depriving appellant of its property without a fair trial."

The writer, Judge Rives, concurs in the judgment of affirmance, but states his views as to the fifth specification of error in a separate concurring opinion.

The judgment is
Affirmed.

RIVES, Circuit Judge (specially concurring).

In holding that the appellant was negligent, that the appellee had not assumed the risk, and in determining the extent of the contributory negligence chargeable to the appellee, the district court of its own motion considered an unusual situation which existed, according to its statement, in the Canal Zone:

> "In the Canal Zone there exists an unusual situation as to tenancy. The employees of the Panama Canal Company also look to it for housing and although they exercise some

10. See Canal Zone Code, Title 3, §§ 4, 5, and 11.

preference in making application for available housing as there are various rental levels, they are still subject to assignment and must take what they are told to take by the housing authorities and have no rights of selection such as exist in a locality where everything is not government owned and there is competitive free enterprise. Therefore, if the plaintiff were dissatisfied with conditions she could not readily move into the apartment building of a competitor because the company is the sole owner and there are no competitors and she and her husband must deal with the company to get a new assignment or in fact any assignment at all."

The district court's opinion containing that statement was delivered on December 28, 1954. The court then continued the case to February 2, 1955, "in order to give counsel for the defendant time in which to advise the Court whether or not they desire to submit proof on the factual assumptions which the Court took judicial notice thereof." On that date the entry shows, "Come counsel for the defendant and state that they do not want to offer additional proof for the reason that the matter is not at issue." The case was again continued for argument,

and on February 16, 1955 the final judgment was entered.

My brothers think that the "captive tenant" theory was advanced by the district court merely arguendo and that its consideration was completely innocuous. I cannot, in good conscience, brush aside so easily the "captive tenant" theory.

As pointed out in footnotes 6 and 7, *supra*, "assumption of risk" in two senses must be considered in determining whether the defendant owed the plaintiff any legal duty. If the appellee had assumed the risk, as the term is used in those senses, then the appellant was not negligent and the judgment should be reversed. In thet meaning of non-negligence, therefore, "assumption of risk" remained in this case.

That the district court considered the "captive tenant" theory most material in its consideration of assumption of risk clearly appears from the part of its opinion quoted in the margin.[1]

Likewise, the reasonableness of the conduct which might constitute negligence on the part of the appellant or contributory negligence on the part of the appellee was to be determined by the totality of all of the facts and circumstances. Here too, according to its opinion,[2] the district court considered its

---

[1] "The picture presented to the court therefore is one of assigned housing to captive tenants and a defective unlighted stairway about which the plaintiff and her husband, the tenants, were complaining. 8 Harvard Law Rev. 470, 471, in a discussion of the difference between contributory negligence and the doctrine of Volenti non fit injuria, the writer said:

"'A person does not necessarily assume the risk of the defendant's negligent action, even if he knows of it. Thus, if A. knows that B. drives his cab carelessly and that he has run down many persons, A. does not necessarily assume the risk of being knocked down, by simply crossing a street in which he knows B. to be driving.'

"The writer further states:

"'Where the relation between plaintiff and defendant is forced upon the plaintiff by the defendant's action, then if the plaintiff is hurt, even with knowledge of

the danger, it does not lie in the defendant's mouth to say "Yes, but you assumed the risk of my misconduct." The plaintiff may well say "it was not my choice. The danger and risk of making the choice was forced upon me by your action." ' "

"Plaintiff's only choice lay in resignation by her husband and a return hundreds of miles to the United States or removal to Panama, a foreign country with high rentals and conditions difficult for employees of the defendant coupled with immigration problems and inaccessibility to the employment of plaintiff's husband. The other alternative lay in securing another assignment from the defendant and as shown by the evidence, the same conditions existed in many similar houses."

[2] "The Court in view of these circumstances is of the opinion therefore that the defendant owes an even higher degree

"captive tenant" theory to be material. So viewing the case, I must meet squarely the fifth specification of error.

The saving grace of the ruling, I think, is that the district court expressly recognized the right of the appellant to dispute the matter judicially noticed by evidence if it believed it disputable,[3] thus differing from those courts which refuse to hear evidence concerning matters of which they take judicial notice.[4] The failure of the appellee to plead the matter, or otherwise to call it to the court's attention, could not, in my opinion, deprive the court of the right to notice the matter pertinent to the issues within both its personal and judicial knowledge.[5]

We should, I think, recognize the superior opportunity for knowledge possessed by the distdict court as to matters of local notoriety in the Canal Zone.[6] The district court exercises a broad discretion in finding whether a matter of fact is of sufficient notoriety to call for its judicial notice,[7] and if, as here, there is an opportunity for rebuttal, judicial notice is not too harmful. In the absence of evidence on behalf of appellant, I think that we are not in position to say that the district court abused its discretion. An appellate court can and will take judicial notice of local conditions within the judicial knowledge of the trial court, when such knowledge is brought into the record as in this case.[8]

I, therefore, concur in the judgment of affirmance.

of care than would ordinarily be imposed upon landlords because the tenants in this socialized form of housing are so greatly limited in their power of selection and their ability to move from a hazardous or dangerous condition."

The term "higher degree of care", I think, does not refer to a different legal standard, but means simply a different amount of care as a matter of fact.

"The concept of degrees of negligence, designated as 'slight,' 'ordinary,' and 'gross,' which appears to have been introduced into the common law from the civil law as it was expounded by scholastic jurists of the Middle Ages, is disapproved by the majority of modern common-law authorities as impracticable, and inconsistent with the theory upon which liability for negligence is imposed." 38 Am.Jur., Negligence, § 43, p. 688.

See also, Prosser, Law of Torts, 2nd ed., p. 149; 65 C.J.S., Negligence, § 8(a).

3. See Ohio Bell Tel. Co. v. Public Utilities Commission, 301 U.S. 292, 302, 57 S.Ct. 724, 81 L.Ed. 1093; United States v. Aluminum Co. of America, 2 Cir., 148 F.2d 416, 446; In re Bowling Green Miling Co., 6 Cir., 132 F.2d 279.

4. See 20 Am.Jur., Evidence, § 26; 9 Wigmore on Evidence 3rd ed., § 2567.

5. Lilly v. Grand Trunk W. R. Co., 317 U.S. 481, 488, 489, 63 S.Ct. 347, 87 L.Ed. 411; 20 Am.Jur., Evidence, § 25; cf. 9 Wigmore on Evidence, 3rd ed., § 2568.

6. In re Bowling Green Milling Co., 6 Cir., 132 F.2d 279, 284.

7. 31 C.J.S., Evidence, § 13 d. 9 Wigmore on Evidence, 3rd ed., §§ 2580, 2583; 20 Am.Jur., Evidence, §§ 18–20, 108.

8. 3 Am.Jur., Appeal & Error, § 834, p. 376; 20 Am.Jur., Evidence, § 20; 31 C.J.S., Evidence, § 13 b.