**Emiliano MUÑOZ et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. Nos. 7366–7368.**

District Court, Canal Zone, Balboa Division.

Nov. 15, 1972.

Henry Newell, Balboa, Canal Zone, for plaintiffs.

Lester Engler, U. S. Atty., Balboa, Canal Zone, for defendant.

FINDINGS OF FACT
and
CONCLUSIONS OF LAW

CROWE, District Judge.

This is an action for personal injuries claimed to have been sustained by the plaintiffs, Emiliano Muñoz, Julia Muñoz and Thelma Y. Caldwell on the 23rd day of February, 1970 while riding

as invitees and passengers in the ambulance of the Canal Zone Government, a subsidiary of the United States of America.

1. The ambulance was owned by the Canal Zone Government and operated by its employee, Henry Johnson, who was a chauffeur for its Health Bureau.

2. February 23rd was a holiday and Julia Muñoz was visiting her brother in Paraiso when she received a call from her daughter, Thelma Y. Caldwell, who was pregnant, that she felt that she was about to give birth, so the mother returned to Gamboa where she lives with her husband, Emiliano Muñoz. Thelma Y. Caldwell is married to an American who was in the United States and she had just returned from the United States and was visiting with her mother, Julia Muñoz, and her stepfather Emiliano Muñoz.

3. The Canal Zone is a controlled community in which there are two subsidiaries of the United States Government, the Canal Zone Government and the Panama Canal Company. The Panama Canal Company owns the housing and many other facilities including the Health Bureau. The Muñoz's were entitled to housing by reason of the employment of Mr. Muñoz and rented their home from the Panama Canal Company, but their daughter was visiting them and although Mr. Muñoz had written to the Housing Manager, requesting permission for her to stay with them, permission had not been granted and at the time of the accident was under review. Because of the ownership of all properties in the Canal Zone by the Canal Zone Government—Panama Canal Company complex and the Treaty with the Republic of Panama, people are permitted to live in the Canal Zone and use its facilities only with the permission of the complex, following the terms of the Treaty and certain amendments and joint memoirs. The plaintiff, Thelma Y. Caldwell, was not entitled to Canal Zone privileges, but the Muñoz's had all of the rights and privileges that accompany employment and residence in the Canal Zone.

4. Plaintiff, Emiliano Muñoz, learned from his stepdaughter that she was about to give birth, and he met Mr. Johnson about 12:20 p. m., coming on foot from the commissary and clubhouse area, and requested him to take his stepdaughter in the ambulance to Gorgas Hospital, the hospital operated by the Canal Zone Government nearest to the plaintiff's home. Mr. Johnson called from the home of plaintiffs Muñoz to the Gorgas Hospital admitting office and talked to the admitting clerk, Mrs. Dorothy Quiros, who authorized the chauffeur to bring Mrs. Caldwell into the hospital.

5. Mr. Johnson secured the ambulance and drove to the Muñoz home. Mrs. Muñoz had returned from Paraiso. The three plaintiffs entered the ambulance. Thelma Y. Caldwell and Julia Muñoz got into the back, and were helped by Mr. Johnson, and Emiliano Muñoz sat on the front seat, on the passenger side, and Johnson operated the vehicle.

6. The ambulance proceeded to the area of Summit Gardens and at that point the chauffeur, Johnson, inquired as to the condition of Thelma Y. Caldwell, but even though she was reported to him by Mrs. Muñoz as doing well, he turned on the red light and the siren and began to go fast. Emiliano Muñoz remonstrated with him, indicating that there was no need for speed, but he proceeded at such a rate that Julia Muñoz was nervous. The ambulance proceeded to the vicinity of Albrook Air Base on Gaillard Highway and on a curve there, near the Little League Ball Park, Mr. Johnson was trying to pass a black car. The black car did not give way and so Mr. Johnson cut out around it and on turning back to the right hand side of the road he struck the gravel and lost control, and the ambulance turned over in the ditch, injuring the three plaintiffs.

7. The fire department and the police came upon the scene and the plaintiffs were taken to Gorgas Hospital. All of the plaintiffs were received by the hospital and retained there for sometime for treatment and plaintiff Caldwell gave birth to her baby in the hospital.

8. The chauffeur, Johnson, was accused of drinking, but admits to having only had two beers, and although an investigation was conducted as to his drinking, he was not arrested and neither police nor the plaintiffs accuse him of being intoxicated. It was a holiday and apparently he was off duty when called into service for the emergency. There is nothing to show that he was unable to operate the vehicle in a reasonable and prudent manner because of the consumption of alcohol.

9. The chauffeur, Johnson, claims to have been proceeding at only about 40 miles an hour. However, the skid marks on the highway, measured by the police, were 140 feet long and, by computation, the traffic experts of the Canal Zone police determined that his speed was approximately 59 miles per hour at the time of the accident. The driver, Johnson, was convicted in the Magistrate's Court as the result of the accident on his plea of guilty of reckless driving.

10. There was no refusal on the part of the defendant's hospital authorities to accept plaintiff Caldwell and she was not ordered transferred to a hospital in Panama but was retained and treated in the Gorgas Hospital, even though she had no housing privileges and was not an employee.

11. Plaintiff, Thelma Y. Caldwell, and plaintiff, Emiliano Muñoz, gave statements for the purpose of conducting an investigation as to the conduct of Henry Johnson, indicating that they had smelled alcohol on his breath and that he showed evidence of drinking. These statements were taken for the purpose of conducting an investigation, were not under oath, and were taken without advice of counsel. Emiliano Muñoz testified that he spoke practically no English and Thelma Y. Caldwell says that she does not read English although she understands it some and lived over a year in the United States as the wife of an American citizen. The effect of the statements is limited by these circumstances and the statements under oath at the trial were convincing.

12. The use of the ambulance was prescribed by Health Bureau Policy Memorandum No. 39 of September 4, 1969 and stated that "Ambulances under control of the Health Bureau are intended exclusively for transportation as follows: a. Eligible sick and injured in the Canal Zone and terminal cities and airport to Health Bureau medical facilities, if indicated" and "d. Emergency cases in the Canal Zone to Health Bureau hospitals or to hospitals in the terminal cities."

13. Mr. Alexander Egudin, a pharmacist employed by the Health Bureau for $38\frac{1}{2}$ years, and who was in charge of the ambulance in Gamboa and saw plaintiffs after the accident, testified that it was the custom for 35 years for members of the family to ride in the ambulances with the patients, as in this case.

14. No proof was offered as to the damages, except to the effect that the plaintiffs were hospitalized, as it was agreed between the parties, and approved by the Court, that the proof would be limited to the question of liability on the assumption that once the liability was determined that settlement could be arranged by counsel.

15. The hospitalization of plaintiff Caldwell was duly paid for by her stepfather, the plaintiff, Emiliano Muñoz.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties and subject matter of the action.

2. The ambulance driver was acting within the scope of his employment.

3. The plaintiff Caldwell was an emergency case and her transporta-

tion was clearly authorized under section "d" of the Health Bureau Policy Memorandum No. 39 of September 4, 1969 and plaintiffs, Emiliano Muñoz and Julia Muñoz, were authorized passengers, as members of plaintiff Caldwell's family, through a custom that had been established for 35 years.

4. The ambulance driver, Henry Johnson, was negligent in the operation of the ambulance and his negligence caused the accident and was the proximate cause of the damages suffered by the plaintiffs who were not guilty of any contributory negligence.

5. The fact that Henry Johnson consumed some alcohol does not compel the conclusion that he was acting outside the scope of his employment.

6. The law of the Canal Zone as to the responsibility of the principal for the acts of his agent reposes in 4 Canal Zone Code § 2739, as follows:

"Unless required by or under the authority of law to employ that particular agent, a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by the agent in and as a part of the transaction of the business, and for his willful omission to fulfill the obligations of the principal."

The acts of the agent, Johnson, are clearly within this statute and the defendant is liable.

See Montgomery v. Hutchins, 118 F.2d 661 (9 Cir., 1941) California case. The law of the Canal Zone was "derived from and patterned after the California Code." Panama Canal Co. v. Wagner, 234 F.2d 163 (5th Cir. 1956); Adams v. United States of America, 302 F.Supp. 1147 (Penn.1969).

7. The clerk is directed to prepare a judgment in accordance with these findings, fixing liability on the defendant, and plaintiffs shall recover their costs. The case shall be again placed on the docket for a determination of the question of damages.